748 So.2d 370 (2000)
Rodney CURTIS, Appellant,
v.
STATE of Florida, Appellee.
No. 99-1085.
District Court of Appeal of Florida, Fourth District.
January 12, 2000.
Richard L. Jorandby, Public Defender, and Paul E. Petillo, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Daniel P. Hyndman, Assistant Attorney General, West Palm Beach, for appellee.

EN BANC
HAZOURI, J.
Rodney Curtis (Curtis) appeals from his conviction and sentence for possession of cocaine. Curtis pled nolo contendere to the charge and reserved his right to appeal the denial of his motion to suppress. We affirm the denial of his motion to suppress.
*371 At the hearing on the motion to suppress, Curtis and the arresting officer, Joel Winfrey (Winfrey), testified as to the facts leading up to the arrest. There was considerable conflict between Curtis's and Winfrey's versions as to what transpired; however, the trial court found that Winfrey was credible and chose to accept his testimony. We are required to accept the trial court's determination of disputed issues of fact in a motion to suppress, as the trial court is vested with the authority to determine the credibility of the witnesses and the weight of the evidence. See State v. Brown, 592 So.2d 308 (Fla. 3d DCA 1991) (Gersten, J., dissenting). Although we are required to accept the trial court's determination of the historical facts leading to the search, a defendant is entitled to a de novo review of whether the application of the historical facts to the law establishes an adequate basis for the trial court's finding of probable cause. See Ornelas v. United States, 517 U.S. 690, 691, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).
On October 11, 1998, Winfrey came in contact with Curtis and Jimmie Lee Moss (Moss) while on routine patrol in the 600 block of Northeast Second Avenue, Fort Lauderdale, Florida. Winfrey approached Curtis and Moss because he wanted to get to know the people in the area. The initial contact between Winfrey and Curtis and Moss was consensual. Winfrey asked Curtis and Moss for their names, dates of birth and social security numbers. Winfrey then ran a check for outstanding warrants.
While speaking to Curtis, Winfrey saw what he identified as a crack cocaine rock in Curtis's mouth partially concealed by his upper lip. Winfrey was within two feet of Curtis when he made this observation. At the time of the encounter, Winfrey had been a police officer for approximately five years and had been involved in hundreds of arrests involving crack cocaine. In Winfrey's experience, the upper lip is a common place for concealing crack cocaine. During cross-examination of Winfrey, the following colloquy transpired:
Q And you made mention in your testimony a moment ago, and also in deposition, that you observed something underneath Rodney's lip?
A Yes.
Q Partially concealed under his lip?
A Correct.
Q And you believed at that point in time for it be [sic] suspect crack cocaine; correct?
A Correct.
Q Now, is it possible it could have been something else?
A In my experience it appeared to be suspect crack cocaine.
Q My question was, I'll repeat it, could it have been something else?
A It could have been, yes.
Q Like what?
A Like anything that resembles crack cocaine.
Q And that could be a number of things; right?
A Correct.
Q It could be a piece of paper, gum, candy?
A Crack cocaine has a very distinct look about it. And I was very close and the object appeared to me to be suspect crack cocaine. Is it possible that it could have been something else? Yes, but highly unlikely.
Upon seeing the crack cocaine, Winfrey ordered Curtis to spit it out. Curtis complied and Winfrey field tested the substance, which tested positive for cocaine. Curtis was arrested and taken into custody.
At the conclusion of the suppression hearing, the trial court found that the initial encounter between Winfrey and Curtis was consensual. When Winfrey saw what he believed to be crack cocaine partially concealed under Curtis's front lip, Winfrey then had founded suspicion converting the *372 consensual encounter into an investigatory stop. The trial court thereafter concluded that based upon a founded suspicion, Winfrey properly commanded Curtis to spit out the crack cocaine although the trial court found Winfrey did not have probable cause to arrest Curtis at that point. After the crack cocaine rock field tested positive for cocaine, the trial court concluded that Winfrey had probable cause to arrest Curtis. For these reasons the trial court denied Curtis's motion to suppress.
The trial court erred in concluding that a founded suspicion entitled Winfrey to order Curtis to spit out the crack cocaine; however, we have concluded that Winfrey had probable cause to believe that a crime was being committed in his presence and, therefore, the order to spit out the crack cocaine was a lawful search incident to an arrest. Even where a trial court's stated reasons for ruling are erroneous, an appellate court will affirm if the result is right but for the wrong reason. See State v. R. M., 696 So.2d 449 (Fla. 4th DCA 1997); Howard v. State, 462 So.2d 31 (Fla. 1st DCA 1984).
It is well settled there are three levels of encounters between the police and the citizenry. Judge Green's opinion in Saturnino-Boudet v. State, 682 So.2d 188 (Fla. 3d DCA 1996), summarized the three levels of encounters and the application of the Fourth Amendment. As the court in Saturnino-Boudet explained:
The first and least intrusive level is commonly referred to as the "consensual encounter." In the consensual encounter, an officer may question anyone on the street without founded suspicion, and unless the officer attempts to prevent the individual from exercising the right to walk away, any such questioning will usually constitute a consensual encounter rather than a stop. No Fourth Amendment protection is implicated at this level.
The second level of a police encounter involves the Terry stop or the temporary investigative "stop and frisk". A Terry stop is permissible if the detention is temporary and reasonable under the circumstances and only if the police officer has a wellfounded suspicion that the individual detained has committed, is committing, or is about to commit a crime. This temporary detention is deemed to be a less intrusive invasion of privacy than a formal arrest and, therefore, may be constitutionally accomplished merely on articulable or founded suspicion of criminal activity. The founded suspicion needed to justify an investigatory stop is fact specific to each case, but it is to be based upon the totality of the circumstances as viewed by an experienced police officer. "At this level ... the officer may conduct a limited search or frisk of the individual for concealed weapons where the officer is justified in believing the person is armed and dangerous to the officer or others." Additionally, the officer may detain the individual even at gunpoint and/or by handcuffs for the officer's safety without converting the Terry stop into a formal arrest. The individual, however, is afforded the protections of the Fourth and Fourteenth Amendments to the United States Constitution and corresponding provisions of the state constitution.
The third and final level of a police encounter is that of the formal arrest. This encounter is the most intrusive invasion of personal privacy and consequently requires a greater evidentiary showing in order to be reasonable, to wit, probable cause to believe that the person arrested has committed a crime. As with the second level, the individual is afforded all protections guaranteed in both the federal and state constitutions.
Id. at 191-92 (citations omitted).
Curtis contends the crack cocaine rock should be suppressed based on this court's decision in Doney v. State, 648 So.2d 799 (Fla. 4th DCA 1994), and our recent decision in State v. Terrell, 731 So.2d 800 (Fla. 4th DCA 1999), because Winfrey did not *373 have the requisite probable cause to order Curtis to spit out the crack cocaine. The facts in Doney, Terrell and the instant case are strikingly similar. In Doney, a uniformed police officer, while on routine patrol and driving a marked vehicle, witnessed a black male give something small to Doney with his thumb and forefinger, and Doney hand the black male paper currency. The officer claimed that this transaction consisted of behavior which he would interpret as a drug transaction. After witnessing this exchange and failing in his attempt to make contact with the black male, the officer pulled his car up behind Doney and got out. Doney stopped and said, "I knew I shouldn't have been messing with that black guy." The officer claimed that this statement reinforced his belief that a drug transaction had taken place, so he stepped closer and asked Doney his name. When Doney responded, the police officer observed what he believed to be cocaine rocks in Doney's mouth. At the suppression hearing, the officer testified that he observed something in Doney's mouth when Doney made his initial statement, but he was unsure of what it was until he asked Doney his name, and Doney responded. The officer then asked Doney to spit the objects out, which he did. The objects field tested positive for cocaine. At the hearing on the motion to suppress, the officer testified that he had been involved in over 1,000 drug arrests and had observed hand to hand drug exchanges at least 1,000 times.
Our court, after reviewing previous case law, determined that the officer witnessing a hand to hand transaction between Doney and the black male, along with his suspicion that Doney was hiding cocaine rocks in his mouth, was insufficient to support a finding of probable cause. The opinion goes on to state:
Doney could have had any of a number of things in his mouth, and the exchange of money in the street does not necessarily evidence an illegal purchase. Probable cause to arrest and search only exists when the totality of the circumstances more likely than not points to the commission of a crime.
Doney, 648 So.2d at 802 (citing Elliott v. State, 597 So.2d 916 (Fla. 4th DCA 1992)).
In Terrell, the trial court relied upon our holding in Doney and granted a motion to suppress the crack cocaine. We reversed the trial court's ruling. The facts on which the trial court relied were similar to those in Doney. While on patrol, a police officer approached the defendant who was on foot and engaged him in a conversation. Eventually, the officer exited his vehicle and continued the conversation. After exiting his car, he noticed a small white square object in the defendant's mouth, which he immediately identified as cocaine. At the hearing on the motion to suppress, the prosecutor asked the officer if there was any doubt in his mind that it might have been "a mint or gum or something like that." The officer responded that sometimes he waits and continues talking to a suspect for the purpose of confirming that the substance is or is not gum, but that in this case further inquiry was unnecessary since he determined immediately that the object was cocaine. Thereafter, the officer grabbed the defendant and ordered him to spit out the object, which tested positive for cocaine.
In distinguishing Doney, Judge Warner noted that the officer stated he observed something in Doney's mouth which he believed to be cocaine, but he was unsure until he asked Doney his name and he responded. Judge Warner points out that in Terrell, the officer had already seen what the officer identified as cocaine in the defendant's mouth before the officer forced the defendant to spit it out. Thus, the officer had more than a bare suspicion. In Doney, the officer was unsure and only suspected that the object was cocaine; whereas, in Terrell, the officer saw the object and was positive. The court thereafter concluded that: "[i]f the positive identification of contraband in a defendant's possession is not probable cause for *374 arrest, we don't know what is." Terrell, 731 So.2d at 802.
We are now faced with the very "discomfort" in deciding cases on a "hair splitting" distinction that Judge Warner forecasted in Terrell.
Curtis argues when Doney and Terrell are read together the conclusion that must be drawn is that when a police officer expresses his identification of cocaine as a belief, as opposed to absolute conviction, and acknowledges that the object could possibly have been something other than crack cocaine, the cocaine must be suppressed. We conclude, however, that Curtis reads more into Terrell than was intended. Terrell was not intended to raise probable cause to the level of an absolute certainty. The reference to positive identification and absolute conviction were used merely to distinguish Terrell from Doney.
In deciding Doney, this court relied heavily upon Cummo v. State, 581 So.2d 967 (Fla. 2d DCA 1991). In Cummo the defendant was stopped by Officer Mohaupt of the Punta Gorda Police Department for operating his pickup truck with only one headlight. Since the stop occurred in a high crime area, backup officers were called to the scene as a matter of routine. Detective Wright was one of the backup officers dispatched. Upon his arrival at the scene, Detective Wright was informed by Officer Mohaupt that he, Mohaupt, had stopped Cummo in the same area approximately one month earlier. At that time, Cummo had admitted to Officer Mohaupt that he was in the area to buy cocaine.
Detective Wright approached the vehicle and began talking with Cummo. He observed Cummo had something in his mouth which he appeared to be trying to hide. When Detective Wright asked him a question, Cummo manipulated the object by moving it with his tongue from one cheek to the other and making "a swallowing motion." Suspecting Cummo was attempting to conceal rock cocaine and was thus trying to swallow it, Detective Wright grabbed Cummo "around the throat, bottom of the jaw, trying to lock his jaw so he couldn't swallow." As a result, Cummo "spit out a small amount of crushed crack cocaine on the hood of his vehicle." A field test indicated the substance was, indeed, crack cocaine.
In reversing the trial court's denial of the motion to suppress, the Second District Court of Appeal concluded that a police officer, when making a valid stop, may conduct a search incident to the stop if he has probable cause to believe that the person detained is armed with a dangerous weapon. However, the court concluded that there was no testimony in the record indicating that Detective Wright believed that the defendant was armed with a dangerous weapon and further that Wright did not see the object in the defendant's mouth and acknowledged that it could have been a lifesaver or a mint. Since there was no evidence other than the detective's bare suspicion that the object in Cummo's mouth was rock cocaine, the search in this instance was not based on probable cause and, therefore, was invalid.
A finding of probable cause does not require absolute certitude. The test for probable cause is whether the facts and circumstances within an officer's knowledge are sufficient to warrant a person of reasonable caution to believe that an offense has been committed. See Benefield v. State, 160 So.2d 706, 708 (Fla.1964); McNeil v. State, 512 So.2d 1062, 1064 (Fla. 4th DCA 1987); State v. Byham, 394 So.2d 1142, 1143 (Fla. 4th DCA 1981). Curtis contends that the facts in his case are nearly identical to Doney and require that the crack cocaine be suppressed. We disagree. Officer Winfrey's belief that what he visualized was crack cocaine is sufficient for probable cause even though he concedes that the substance could have been something else. Winfrey's acknowledgment that the substance could be something other than crack cocaine does not necessarily convert his belief to bare suspicion. *375 To the extent that our opinion conflicts with Doney, we hereby recede from Doney.
We, therefore, for reasons stated above, find that there was probable cause to believe there was the commission of a crime in the presence of a police officer, i.e., the possession of crack cocaine, and the search and seizure was valid as being incident to a lawful arrest. We affirm the trial court's denial of the motion to suppress and affirm the conviction.
WARNER, C.J., DELL, GUNTHER, STONE, POLEN, FARMER, KLEIN, STEVENSON, SHAHOOD, GROSS and TAYLOR, JJ., concur.