772 So.2d 43 (2000)
Richard GARMON, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-509.
District Court of Appeal of Florida, Fourth District.
October 4, 2000.
Rehearing Denied December 12, 2000.
*44 Michael J. Entin of Law Offices of Michael J. Entin, Fort Lauderdale, and Neal Gary Rosensweig of Neal Gary Rosensweig, P.A., Coral Gables, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, Gentry Denise Benjamin and Georgina Jimenez-Orosa, Assistant Attorneys General, West Palm Beach, for appellee.
STETTIN, HERBERT, Senior Judge.
Richard Garmon appeals from his conviction and concurrent three year prison sentences for possession of cannabis and possession of a firearm by a convicted felon. The trial court denied his motion for judgment of acquittal for failure to prove the corpus delicti of the crimes charged, independent of his self-incriminating *45 statements. We affirm his convictions for the reasons that follow.

Underlying Facts
On January 9, 1998, members of the Broward County Sheriff's Selective Enforcement Team executed a search warrant at a single family house in Fort Lauderdale, Florida, occupied by Garmon and his girlfriend Susan Armento. They rented the premises and lived there as a couple. Detective Baker had conducted surveillance of the house approximately twelve times in the month prior to the execution of the search warrant, during which he observed a number of people come to the house, stay for only a few minutes and then leave. Baker, suspecting drug activity, conducted a "trash pull", consisting of a search of garbage which Garmon placed in the swale area in front of the house. He found mail addressed to Garmon, together with leafy material and seeds which tested positive for cannabis.
Garmon and Armento were both present when the warrant was served. Garmon was handcuffed, given his Miranda warnings, and seated on a couch. According to Baker, Garmon then "told his girlfriend to go ahead and show us where everything was." Garmon also told the officers there was cannabis behind a bedroom mirror and he mentioned a scale on the floor in a bedroom.
After being told by Garmon to do so, Armento showed the officers cannabis located behind the bedroom mirror, behind an air conditioning return duct in a hallway, in a bedroom drawer, and, after being searched, on her own person. In total, the police recovered over two hundred thirty grams of cannabis, together with the scale and some plastic baggies found in a bedroom. The police testified that Garmon showed no reaction or emotion when the contraband was found. It is undisputed that none of the cannabis was found in plain view or in an area of the house controlled only by Garmon.
During the search Garmon was asked whether he had any weapons. The officers knew at the time he was a convicted felon. Garmon told them he had an archery bow in the bedroom and that he had guns in his Ford Bronco truck parked in the driveway. He told the police the firearms were located behind the driver's seat and in the rear of the truck, stating he had placed them in the truck in preparation for a hunting trip. An officer obtained the truck keys from Garmon who also told them of the existence and location of a "kill switch" (apparently, an anti-theft device). The police searched the vehicle and found the firearms where Garmon said they would be. There was a .44 caliber pistol and ammunition in a gun case behind the seat, and a rifle and shotgun placed together in a gun case in the rear of the truck. Garmon first said that the guns belonged to him; later, he told the officers that the weapons belonged to Armento. One officer confronted Garmon with the fact that as a convicted felon he was not allowed to be in possession of firearms. Garmon responded that he "thought that my right to carry weapons was reinstated automatically after five years after being out of prison."
At trial, the state presented evidence that the truck was registered and insured in Garmon's name. During the search of the truck, the officer found another man's wallet containing a driver's license on the floor in front of the passenger seat.
Garmon was charged with possession of cannabis, possession of a firearm by a convicted felon, and possession of drug paraphernalia. The drug paraphernalia charge was later dismissed. Armento was charged with possession of cannabis. She pleaded guilty and was placed on probation.
At the conclusion of the state's case, Garmon moved for a judgment of acquittal, arguing that the state had failed to prove the corpus delicti as to both charges, independent of his self-incriminatory statements. His motion was denied and it was *46 denied again when it was renewed at the conclusion of all of the evidence.
The state's evidence consisted of the testimony of Baker and another officer who was present when the warrant was executed. Garmon presented the testimony of Armento who claimed she bought the cannabis for her personal use in order to alleviate migraine headaches. She did not explain the presence of the scale and plastic baggies, nor did she comment on Garmon's instructions telling her to show the cannabis to the officers. She produced bills of sale in her name for two of the weapons stating she and Garmon had been preparing for a hunting trip in central Florida with several friends. She said Garmon hunted with a bow and arrows, "that she alone used the guns", that Garmon's friends had access to the Ford truck, and that one of his friends loaded the guns and camping gear into the truck earlier on the day the warrant was served.
Three friends of Garmon testified. Each affirmed that while they did not know whether Garmon used marijuana, they said that Armento did. Two also said Armento owned and used the firearms and that Garmon did not. One witness, Wayne Faust, testified he drove the truck on the day in question. He claimed that he loaded the truck with the guns and camping gear at Armento's direction. It was his wallet and driver's license which were found in the truck.

Discussion
In order to convict Garmon of the crimes with which he was charged, the state was required to prove the corpus delicti of each offense. The state had to prove:
(1) that a crime of the type charged was committed; and (2) that the crime was committed through the criminal agency of another. In regard to the first partthat a crime was committed each element of the relevant offense must be shown to exist. With respect to the second partthe criminal agency of anotherthe proof need not show the specific identity of the person who committed the crime. That is, it is not necessary to prove that the crime was committed by the defendant.
Franqui v. State, 699 So.2d 1312, 1317 (Fla.1997), cert. denied, 523 U.S. 1097, 118 S.Ct. 1582, 140 L.Ed.2d 796 (1998) (citations omitted).
Ordinarily, proof of the corpus delicti of the crime charged is required before a confession or admission against interest may be received in evidence. See Burks v. State, 613 So.2d 441, 443-44 (Fla. 1993); Davis v. State, 730 So.2d 837, 838 (Fla. 4th DCA 1999). Although it is preferable that such proof be received first, "a subsequent prima facie showing will cure a premature admission." McIntosh v. State, 532 So.2d 1129, 1131 (Fla. 4th DCA 1988). The state is not required to prove the elements of the corpus delicti beyond a reasonable doubt before admission of a defendant's self-incriminatory statements. See State v. Allen, 335 So.2d 823, 825 (Fla.1976). That burden is only required to convict. The state must, however, present substantial evidence which tends to show that the crime charged was, in fact, committed by someone. Baxter v. State, 586 So.2d 1196, 1199-1200 (Fla. 2d DCA 1991). Although the corpus delicti may not be established only through the defendant's statements against interest, nevertheless, "confessions and admissions may be considered in connection with other evidence to establish it...." Hodges v. State, 176 So.2d 91, 92 (Fla.1965). See also Baxter, 586 So.2d at 1200; Hively v. State, 336 So.2d 127 (Fla. 4th DCA 1976). The essential requirement appears to be that in order for the admission of the inculpatory statement there must be other evidence of the crime charged. Stated differently, the crime charged cannot be proven only through the defendant's statements. This is so in order to avoid a conviction based on "derangement, mistake or official fabrication." Allen, 335 So.2d at 825.
*47 Applying these principles to the facts of this case, it appears clear to us that there was independent evidence which, taken together with Garmon's statements to the police, was sufficient to support his conviction for possession of cannabis. In order to prove a prima facie case of possession of cannabis, the state was required to show that: (1) the defendant had knowledge of the presence of the cannabis; (2) the defendant had the ability to exercise dominion and control over the cannabis; and (3) the defendant had knowledge of the illicit nature of the cannabis. See Brown v. State, 428 So.2d 250, 252 (Fla.1983); Hively, 336 So.2d at 129; Wale v. State, 397 So.2d 738, 739 (Fla. 4th DCA 1981).
There is no dispute that the state proved the substance in question was cannabis. The independent evidence of Garmon's knowledge and ability to control it included the suspicious activity noted by Detective Baker in his surveillance and trash pull, the presence of the scale and plastic baggies in plain view in a bedroom, Garmon's joint control of the house, his statements to Armento that she show the contraband to the police, and his directions to a stash she had overlooked. Taken together, there was a sound basis for the admission of his statements, which with the other evidence, was sufficient to deny his motion for acquittal and for the submission of the case to the jury.
The rationale for permitting the use of a defendant's statement against interest in such circumstances is best explained in Opper v. United States, 348 U.S. 84, 93, 75 S.Ct. 158, 99 L.Ed. 101 (1954), wherein the court said:
[h]owever, we think the better rule to be that the corroborative evidence need not be sufficient, independent of the statements, to establish the corpus delicti. It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. Thus, the independent evidence serves a dual function. It tends to make the admission reliable, thus corroborating it while also establishing independently the other necessary elements of the offense. It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth. Those facts plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt.
(Citation omitted).
The same conclusion as to the admissibility of Garmon's statements is true with regard to the motion for judgment of acquittal of the charge of possession of a firearm by a convicted felon. To prove a prima facie corpus delicti of such a crime the state was obligated to prove Garmon was a convicted felon (which was stipulated to) and that he knowingly owned or had a firearm in his care, custody, possession, or control. See Creamer v. State, 605 So.2d 541, 542 (Fla. 1st DCA 1992).
The state independently proved at trial that Garmon owned the Ford truck and that it contained a hidden "kill switch" which had to be disarmed before the vehicle could be started. In addition, there were Garmon's self-incriminating statements concerning his ownership of the weapons, their location in the truck, his erroneous belief of his right to possess the weapons despite being a convicted felon, and his surrender of the truck keys to the police.
While it is certainly true that mere proof of ownership is not sufficient to support an inference of possession or control of contraband located within a vehicle, see Manning v. State, 355 So.2d 166, 167 (Fla. 4th DCA 1978) (and cases cited therein), nevertheless, there was sufficient evidence of possession or control by Garmon, which with his incriminating statements, was sufficient for the jury to decide the issue.

*48 Conclusion

We affirm the convictions and sentences for possession of cannabis and for possession of a firearm by a convicted felon.
STONE and HAZOURI, JJ., concur.