786 So.2d 602 (2001)
STATE of Florida, Appellant/Cross-Appellee,
v.
Vanette WEBB, Appellee/Cross-Appellant.
No. 1D99-4221.
District Court of Appeal of Florida, First District.
April 10, 2001.
Rehearing Denied June 7, 2001.
Robert A. Butterworth, Attorney General, James W. Rogers and Edward C. Hill, *603 Jr., Assistant Attorneys General, Tallahassee, for Appellant/Cross-Appellee.
Laura L. Whiteside of Laura L. Whiteside, P.A., Tampa; Michael R. Rollo, Pensacola, for Appellee/Cross-Appellant.
ERVIN, J.
The state of Florida appeals an order granting appellee Vanette Webb's motion in arrest of judgment and vacating her first-degree misdemeanor conviction under the Public Records Law. Pursuant to section 119.02 and/or 119.10(2), Florida Statutes (1997), a jury convicted Webb, who is a member of the Escambia County School Board, of violating section 119.07(1)(a), Florida Statutes (Supp.1998),[1] as a result of her failure to produce certain requested public records. In granting the motion to arrest judgment and vacating the conviction, the county court found that the state had failed to prove the existence of any public records that Webb was alleged not to have reasonably made available, and that section 119.07(1)(a) was unconstitutional as applied to Webb.[2] In addition to the state's appeal challenging this order, Webb filed a cross-appeal, contending that section 119.07(1)(a) is facially unconstitutional. We reverse that portion of the order arresting judgment and vacating the conviction, because the evidence was sufficient to prove a violation of the statute, and because the application of section 119.07(1)(a) to Webb was constitutional.[3] We affirm Webb's cross-appeal without discussion, concluding that the trial court correctly determined that the law is constitutional on its face.
This controversy began when Susan Watson, a parent and member of a group named Citizens for Community Values, submitted public-records requests to Webb on March 30, 1998; April 6, 1998; and May 4, 1998. Webb did not respond until May 19, 1998, when she began trying to schedule a time for Watson to review her records. Thereafter, during a period spanning several months, Webb provided Watson with three record inspections, none of which was satisfactory to Watson because of the abbreviated timetables that Webb had dictated.
Finally, in November 1998, at the direction of the grand jury, Webb placed all of the public records she possessed in a filing cabinet and four large boxes. After the school board chairman, Dr. Hal Mason, made an effort to remove confidential information from the documents before disclosing them to Watson, Webb abruptly terminated the inspection process on November 23, claiming the records had not been properly redacted. As a result, Watson has never completed her review of the records.
After Webb was found guilty and began serving her sentence, she filed posttrial motions for new trial and arrest of judgment. *604 Following the trial judge's recusal, the successor judge vacated the verdict and sentence. The court held that the state had failed to prove an essential element of the offense, because it did not adequately establish the existence of any particular record that was a "public record" under section 119.07(1)(a). The court ruled that this omission denied Webb the opportunity to attempt to show that the documents were not public records or that they were exempt from disclosure. The court also held that section 119.07(1)(a) was unconstitutionally applied to Webb, and detailed its reasons in a separate order.
We first address the court's ruling that section 119.07(1)(a) was unconstitutional as applied to Webb. To find a law unconstitutional as applied, the court must limit itself to an analysis of whether the statute is so vague that it cannot be determined whether it prohibits the specific conduct at issue in the case. See Travis v. State, 700 So.2d 104 (Fla. 1st DCA 1997); State v. Barnes, 686 So.2d 633 (Fla. 2d DCA 1996). The lower court concluded that Webb was forced to speculate about what was expected of her, because section 119.07(1)(a) requires persons in custody of public records to allow their records to be examined "at any reasonable time, under reasonable conditions"; however, the statutory provision failed to define these terms. We cannot agree with this reasoning. Courts have frequently upheld the constitutionality of statutes that require certain conduct to be "reasonable" under the particular circumstances. See, e.g., State v. Manfredonia, 649 So.2d 1388 (Fla. 1995); Smith v. State, 237 So.2d 139 (Fla. 1970).
Evidence was presented that Webb took one and one-half months to respond to Watson's initial public-records request; that it was nearly four months before Webb attempted to schedule a time for Watson to review documents responsive to the requests; that Webb gave Watson one hour to review a ten-inch stack of documents and then allowed only two additional one-hour sessions five weeks later; that Webb terminated Watson's review after this third session; and that Webb did not provide all of her public records until she received a request from the grand jury nearly seven months after Watson's request. We therefore conclude that section 119.07(1)(a) provided Webb with fair warning that her dilatory responses to Watson's requests would not comport with the statute's requirement that she provide "reasonable" access to public records in her custody.
The county court also decided that the statute had been applied to Webb in an unconstitutional manner, because the evidence showed that Webb had attempted to provide records to Watson; therefore, it was possible that merely negligent conduct was made subject to criminal penalties. Once again, we cannot agree. In the cases the court relied on for its conclusion, statutes were declared unconstitutional because the language therein permitted convictions for negligence alone rather than for intentional conduct. See State v. Hamilton, 388 So.2d 561 (Fla.1980); State v. Winters, 346 So.2d 991 (Fla.1977). In contrast, in the case at bar, sections 119.02 and 119.10(2) authorize a conviction for violating section 119.07 only if a defendant is found to have committed such violation "knowingly," or "willfully and knowingly," respectively. For the above reasons, the statute cannot reasonably be interpreted as allowing the jury to convict Webb for mere negligence.
The state thus proved that Webb had engaged in conduct encompassed by section 119.07(1)(a). "If the record demonstrates that the [defendant] engaged in *605 some conduct clearly proscribed by the plain and ordinary meaning of the statute, then [the defendant] cannot successfully challenge it for vagueness...." Barnes, 686 So.2d at 637. Accordingly, the trial court erred in finding the statute unconstitutional as applied to Webb.
We now turn to the portion of the court's order vacating Webb's conviction on the ground that the state failed to prove an essential element required by section 119.07(1)(a): that the documents requested were public records subject to disclosure under the statute. On the contrary, the state established this element through Webb herself and various witnesses who reviewed Webb's records.
At trial, Webb freely acknowledged that the records she had been ordered by the grand jury to deliver were public records. Although an element of the corpus delicti of an offense cannot be established solely by a defendant's admission against interest, the jury may consider such admissions so long as there is independent evidence that tends to establish the element. See, e.g., Burks v. State, 613 So.2d 441 (Fla.1993); Hodges v. State, 176 So.2d 91 (Fla.1965). There was such evidence. The school board chairman, Dr. Mason, testified that he had begun the process of examining Webb's records to determine which documents, if any, were exempt from disclosure, and spent most of one day doing so. He thereafter furnished the documents that were not exempt to Watson. Ed Fleming, the school board's attorney, testified that following Dr. Mason's review, he required an associate in his law firm, Suzanne Blankenship, to inspect all of Webb's records to determine which were made confidential by the Public Records Law. Blankenship testified that after an eleven-hour review, she had removed all documents that were exempt from disclosure. The witnesses' combined testimony reveals that the records which Webb had assembled were public records subject to disclosure under section 119.07. See Garmon v. State, 772 So.2d 43, 46 (Fla. 4th DCA 2000) ("The state is not required to prove the elements of the corpus delicti beyond a reasonable doubt before admission of a defendant's self-incriminatory statements.... The state must, however, present substantial evidence which tends to show that the crime charged was, in fact, committed by someone.").
We therefore reverse the trial court's order vacating Webb's conviction and finding section 119.07(1)(a) unconstitutional as applied. We express no opinion as to any of the issues the court mentioned in its memorandum order as possibly warranting a new trial, and which were not included as points on appeal.
REVERSED and REMANDED.
WEBSTER and LEWIS, JJ., concur.
NOTES
[1] Section 119.07(1)(a) provides in part:

Every person who has custody of a public record shall permit the record to be inspected and examined by any person desiring to do so, at any reasonable time, under reasonable conditions, and under supervision by the custodian of the public record or the custodian's designee.
[2] We have jurisdiction over the appeal of the county court's order. See Fieselman v. State, 566 So.2d 768 (Fla.1990); Snedeker v. Vernmar, Ltd., 151 So.2d 439 (Fla.1963).
[3] Although we reverse the court's substantive holdings, we reject the state's contention that the court did not have the authority to vacate Webb's conviction pursuant to her motion seeking new trial. In the body of such motion, Webb renewed her motion for judgment of acquittal and cited the rule governing motions in arrest of judgment. See, e.g., Bailey v. Mobile Home Park Realty, Inc., 579 So.2d 198 (Fla. 2d DCA 1991); State v. Harris, 439 So.2d 265 (Fla. 2d DCA 1983).