817 So.2d 1062 (2002)
MARION COUNTY, Appellant,
v.
DEPARTMENT OF COMMUNITY AFFAIRS, et al., Appellee.
No. 5D01-1891.
District Court of Appeal of Florida, Fifth District.
June 7, 2002.
Gordon B. Johnston, County Attorney, and Thomas B. MacNamara, Assistant County Attorney, Ocala for Appellant, Marion County.
John K. McPherson of Coffey & McPherson, Gainesville, for Appellee Intervenors.
Alfred O. Bragg, III, Tallahassee, for Appellee, Department of Community Affairs.
*1063 David D. Eastman of Lutz, Webb, Bobo & Eastman, Tallahassee, for Appellee Amici FMHA.
PETERSON, J.
Marion County appeals a summary final judgment finding that its Ordinance 98-21 is "invalid insofar as it attempts to restrict manufactured housing within a residentially zoned area which otherwise permits on site construction."
On May 20, 1998, the Board of County Commissioners of Marion County enacted Ordinance 98-21 to discourage incompatible land uses. The operative section of the ordinance allowed manufactured buildings to be installed "in all zoning classifications which allow residential structures, except R-1 properties located in subdivisions." The ordinance clashed head-on with a preexisting statute, section 553.38, Florida Statutes (1998), which provided:
The department shall enforce every provision of this part and the rules adopted pursuant hereto, except that local land use and zoning requirements, fire zones, building setback requirements, side and rear yard requirements, site development requirements, property line requirements, subdivision control, and onsite installation requirements, as well as the review and regulation of architectural and aesthetic requirements, are specifically and entirely reserved to local authorities. Such local requirements and rules which may be enacted by local authorities must be reasonable and uniformly applied and enforced without any distinction as to whether a building is a conventionally constructed or manufactured building. A local government shall require permit fees only for those inspections actually performed by the local government for the installation of a factory-built structure. Such fees shall be equal to the amount charged for similar inspections on conventionally built housing.
(Emphasis added). Manufactured housing was defined in section 553.36(11), Florida Statutes (1998), which provided:
"Manufactured building" means a closed structure, building assembly, or system of subassemblies, which may include structural, electrical, plumbing, heating, ventilating, or other service systems manufactured in manufacturing facilities for installation or erection, with or without other specified components, as a finished building or as part of a finished building, which shall include, but not be limited to, residential, commercial, institutional, storage, and industrial structures. This part does not apply to mobile homes. Manufactured building may also mean, at the option of the manufacturer, any building of open construction made or assembled in manufacturing facilities away from the building site for installation, or assembly and installation, on the building site.
Although there have been minor amendments to these sections, both are substantially in the same form. See §§ 553.36(12); 553.38, Fla. Stat. (2001).
The Florida Department of Community Affairs (FDCA) filed a complaint seeking declaratory relief invalidating a previous ordinance adopted on February 17, 1998, and to enjoin enforcement. The previous ordinance, 98-2, dealt with the same subject, but imposed only a 180-day moratorium on the manufactured housing in R-1 zoning in unincorporated Marion County. The FDCA's attempt to temporarily enjoin enforcement of 98-2 was not successful. See Department of Cmty. Affairs v. Marion County, 734 So.2d 1147 (Fla. 5th DCA 1999) (Marion County I). Shortly after FDCA filed its complaint, Marion County enacted ordinance 98-21 which repealed 98-2 and permanently prohibited manufactured housing in R-1 zoned subdivisions in the unincorporated areas of the county. *1064 FDCA then amended its complaint seeking the same remedy against the later statute.
Marion County initially argues that the decision in Marion County I is dispositive of this appeal because that decision established the law of the case. We disagree. Marion County I did not consider the legality of 98-21; the only issue was whether the trial court abused its discretion by refusing to grant the FDCA's request for a temporary injunction. The trial court's refusal was affirmed. Denial of a preliminary injunction or revival of an order granting one does not preclude the granting of a permanent injunction at the conclusion of a full hearing.
Marion County next argues that section 533.38 is unconstitutionally vague and ambiguous because it is internally contradictory and provides the FDCA with unlimited enforcement authority to determine whether Marion County's "requirements and rules" are reasonable. Courts, however, have frequently upheld the constitutionality of statutes that require certain conduct to be reasonable under the particular circumstances. See, e.g., State v. Manfredonia, 649 So.2d 1388 (Fla.1995); Smith v. State, 237 So.2d 139 (Fla.1970); State v. Webb, 786 So.2d 602 (Fla. 1st DCA 2001). Additionally, the reasonableness contained in section 553.38 relates to whether a requirement or rule distinguishes between a conventionally constructed house or a manufactured building as defined in section 553.36(12), Florida Statutes (2001). We further disagree that the statute contains contradictions. The first sentence of the statute reserves certain powers to local authorities, and the second sentence merely qualifies that power by disallowing local rules that would distinguish between the two types of construction.
Marion County has made clear that the motive for enacting 98-21 was a response to the complaints by landowners in R-1 districts that manufactured buildings are not compatible with conventionally built homes for the reasons that:
1. Manufactured homes are different in appearance, mostly due to shallow-pitched roof lines.
2. Conventionally built homes are subject to strict building codes and undergo rigorous inspections by county officials during the building process while manufactured homes are inspected and approved by the FDCA.
3. Manufactured homes burn quickly and are usually beyond saving by the time fire departments can respond.
The only argument that seems valid to us is the first of these. An extension of this argument is that the two types of buildings when placed side-by-side have incompatible appearances. This incompatibility has a detrimental effect on the value of the conventionally built home. The validity of the other reasons are suspect when it is recognized that Marion County has narrowed its exclusions to only subdivisions in R-1 districts. Manufactured housing is not restricted in any zoning classification except subdivisions zoned R-1 in unincorporated areas of the county.
The Florida Legislature has made it clear in section 553.38 that it is the policy of the state that manufactured buildings may not be the subject of discrimination by local authorities. The main complaint by Marion County appears to be that when a manufactured building is placed side-by-side with a conventional building, they are incompatible in appearance and undermine property values. The legislature seems to have recognized that appearance is important and has reserved the right to local authorities to enact architectural and aesthetic requirements uniformly applicable to all building methods. There has been no attempt by Marion *1065 County to exercise those rights reserved to local authorities in the statute. Instead, the county has chosen to do exactly that which the legislature prohibits. Obviously, the county, as a political subdivision of the state created by the legislature, must yield to the policy established by the legislature.
AFFIRMED.
COBB and GRIFFIN, JJ., concur.