889 So.2d 132 (2004)
Samuel COCKE, Appellant,
v.
STATE of Florida, Appellee.
No. 4D03-3097.
District Court of Appeal of Florida, Fourth District.
December 1, 2004.
Rehearing Denied January 6, 2005.
*133 Carey Haughwout, Public Defender, and Anthony Calvello, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Daniel P. Hyndman, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
Cocke appeals his convictions of burglary of a vehicle and petit theft contending that the court erred in denying his motion to suppress evidence and his confession. Because the police illegally detained Cocke without probable cause, we reverse.
Officer Hanley, on patrol in the early morning hours in Boca Raton, received a BOLO of a "suspicious incident." The BOLO described a vehicle, its occupants, and the vehicle's direction of travel. It did not give details of the "suspicious incident." The BOLO was prompted by a report from a resident of the city that he had observed two men looking into his vehicle parked in his driveway around 3:00 a.m.
After receiving the BOLO, Officer Hanley observed a vehicle matching the description in the BOLO and stopped it. The driver exited the vehicle and fled. Hanley removed Cocke, the passenger, handcuffed him, and patted him down for weapons. He found none. He then placed Cocke, still handcuffed, in the locked rear seat of his patrol car. Officer Hanley then searched the subject vehicle for weapons, finding none. About ten to fifteen minutes after first encountering Cocke, several more officers arrived with dogs to search for the driver. Some of the officers remained at the location of the vehicle while Officer Hanley joined the search. Another fifteen minutes passed.
Immediately after Hanley returned from the search for the driver, the resident who reported the suspicious incident arrived and identified the vehicle. He also identified Cocke by his stature but could not identify his face. Cocke remained in custody in the locked police car throughout this entire time. Hanley then read Cocke his Miranda rights. Cocke told Hanley that the items in the car belonged to him and the driver and that they had been smoking marijuana. Thereafter, Hanley went to the car, found marijuana, and then arrested Cocke for possession. This ultimately led to the seizure of various items from the vehicle, for which Cocke was charged with burglary.
Cocke moved to suppress his confession to the use of marijuana as well as all of the evidence found in the vehicle on the *134 ground that he was illegally detained without probable cause when the officer obtained his confession. Although the state conceded at the hearing that Officer Hanley did not have probable cause to arrest Cocke, the trial court denied the motion to suppress, determining there was probable cause for the arrest. Cocke then pled guilty to the crimes, reserving his right to appeal the denial of his motion to suppress.
Although Cocke suggests that the officer did not have even reasonable suspicion to detain him, he does not ask us to decide that issue. Instead, he argues that whether or not the officer had reasonable suspicion to detain him, the detention turned into a de facto arrest when Cocke was placed in handcuffs in the locked rear seat of the police vehicle for thirty to forty-five minutes without probable cause. Commendably, the state does not claim that probable cause existed until Cocke admitted using marijuana. Therefore, the issue presented is whether Cocke was illegally detained before the confession was obtained.
In Melendez v. Sheriff of Palm Beach County, 743 So.2d 1145 (Fla. 4th DCA 1999), we examined whether continued detention through the use of handcuffs constituted an illegal detention if not supported by probable cause. Citing to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and section 901.151(2), Florida Statutes (1995), we noted that a Terry stop can last no longer than is reasonably necessary for a police officer, who believes a suspect has committed a crime, to determine the circumstances surrounding the suspect's presence. Melendez, 743 So.2d at 1148. We said,
Time is an important factor. In assessing the duration of a detention, the court must look to whether the police diligently acted to confirm or dispel their suspicions. The consideration of the nature of detention involves in part the `degree of fear and humiliation that the police conduct engenders.' While handcuffs do not in and of themselves signify an arrest, they heighten the degree of intrusion.
Id. (internal citations omitted).
We relied on Reynolds v. State, 592 So.2d 1082 (Fla.1992), where the court discussed the use of handcuffs in an investigatory stop and said:
We do not suggest that police may routinely handcuff suspects in order to conduct an investigative stop. Whether such action is appropriate depends on whether it is a reasonable response to the demands of the situation. When such restraint is used in the course of an investigative detention, it must be temporary and last no longer than necessary to effectuate the purpose of the stop. The methods employed must be the least intrusive means reasonably available to verify or dispel in a short period of time the officers' suspicions that the suspect may be armed and dangerous. United States v. Glenna, 878 F.2d at 972. Absent other threatening circumstances, once the pat-down reveals the absence of weapons the handcuffs should be removed.
....
Although we find that the initial handcuffing of Reynolds was appropriate, we find that the continued use of handcuffs after the pat-down was illegal. At that point, the officers had no reason to believe that weapons were present. According to the testimony of one of the officers, the suspects offered no resistance, were not particularly belligerent, and did not make any threats. Under these facts, the use of handcuffs after *135 the pat-down was not reasonably justified under the circumstances.
592 So.2d at 1085-86.
In Melendez, the suspect was handcuffed and held for thirty minutes while an investigation during that time revealed no evidence to connect Melendez to a crime. We concluded:
The handcuffs should have been removed once the officers' suspicions that Melendez might be armed and dangerous were dispelled. Because they were not, the seizure of Melendez was more than "minimally intrusive" and therefore had to be supported by probable cause. See Terry, 392 U.S. at 22, 88 S.Ct. 1868.
743 So.2d at 1149.
Baggett v. State, 849 So.2d 1154 (Fla. 2d DCA 2003), is analogous to this case. In Baggett, the court reversed the denial of defendant's motion to suppress evidence. The court held that assuming the initial detention was proper, it turned into a de facto arrest without probable cause when the officer handcuffed defendant and read Miranda warnings to him. The officer expressed no concerns for safety to support the handcuffing, no pat-down was conducted on defendant to determine if he was armed, and there were no threatening circumstances to justify keeping him in handcuffs throughout the detention. Additionally, in Poey v. State, 562 So.2d 449 (Fla. 3d DCA 1990), the court reversed the denial of defendant's motion to suppress evidence because there was insufficient evidence of probable cause to arrest defendant. The court held that "[w]hen defendant was informed of his Miranda rights, handcuffed, and placed inside the patrol car, he was arrested." Poey, 562 So.2d at 450 (citation omitted).
Here, assuming without deciding that Cocke was lawfully stopped for being a suspect in a "suspicious incident," the stop turned into a de facto arrest when Cocke was handcuffed and placed inside of the patrol car and detained for a significant period of time. The officer did not express any concerns for his safety, and he had already patted Cocke down and searched the vehicle for weapons. Cocke offered no resistance and was not belligerent. When Cocke was read his Miranda rights the officers did not have probable cause to believe that he had committed any crime. Therefore, his confession and the subsequent seizure of items from the vehicle were without probable cause. The motion to suppress should have been granted.
We reverse and remand for the court to vacate Cocke's convictions and sentences, as the state conceded that the motion to suppress was dispositive of the case.
FARMER, C.J. and SHAHOOD, J., concur.