955 So.2d 1256 (2007)
Corey Terrell STUDEMIRE, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-4019.
District Court of Appeal of Florida, Fourth District.
May 23, 2007.
Carey Haughwout, Public Defender, and Lindsay Hanson, Assistant Public Defender, West Palm Beach, for appellant.
*1257 Bill McCollum, Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.

ON MOTION FOR REHEARING
STONE, J.
We deny Studemire's motion for rehearing, but withdraw the previous opinion of April 11, 2007, and replace it with the following:
Studemire was convicted of possession of a firearm by a felon. He challenges an order denying his motion to suppress his statement to the police and the denial of his motion for judgment of acquittal. We affirm.
On New Year's Day, after 1:00 a.m., Officer MacVane, while patrolling within the city limits, heard gunshots being fired and proceeded to an area from which he believed the shots originated, where he found Studemire and another man, Chappelle. They were standing in a driveway by a vehicle. There were bullet casings and shotgun shells on the ground. Chappelle admitted to MacVane that he was the person who fired the shots and produced a shotgun. Chappelle also acknowledged having other guns on the premises and consented to the officer's search of the house, where the officer found two more guns.
Additional police officers arrived at the scene. One asked for Studemire's identification, to which he replied he had none. When the officer inquired as to his name, Studemire gave him a false name. MacVane then asked him to identify himself, and, again, Studemire gave a false name. After MacVane confronted him, Studemire gave a second name, an alias under which he had been previously convicted. MacVane decided to detain Studemire, handcuffed him, and placed him in the back of his patrol car. The record is silent as to whether MacVane conducted a pat-down of Studemire.
While this was going on, the other officers found an automatic handgun lying in plain view on top of the passenger side front tire of the vehicle. MacVane asked if the handgun had been discharged by Studemire. Studemire, who had been read Miranda rights, replied in the affirmative and also admitted that he was a convicted felon. Studemire later signed a written confession admitting that he and other persons fired the guns.
During trial, Studemire moved to suppress all statements made after he was handcuffed and placed in the patrol car.
Clearly, MacVane had the requisite reasonable suspicion to conduct a Terry[1] stop. The question in this case is whether MacVane's actions in placing Studemire in handcuffs and placing him in the back of the car escalated the detention to a de facto arrest, for which probable cause is necessary.
The use of handcuffs does not automatically turn an investigatory stop into a de facto arrest. Reynolds v. State, 592 So.2d 1082, 1084 (Fla.1992) (citations omitted)(emphasis added) ("Courts have generally upheld the use of handcuffs in the context of a Terry stop where it was reasonably necessary to protect the officers' safety or to thwart a suspect's attempt to flee."); Curtis v. State, 748 So.2d 370, 372 (Fla. 4th DCA 2000) ("officer may detain the individual even at gunpoint and/or by handcuffs for the officer's safety without converting the Terry stop into a formal arrest").
*1258 We conclude, based on the totality of the circumstances, that Studemire was lawfully detained and that the temporary detention was not converted into a de facto arrest by handcuffing him and holding him in the police car. We note that Officer MacVane testified that part of the reason Studemire was handcuffed was because
it would have been better, for officer safety, to make sure that he was handcuffed. Had he been an escaped prisoner from some other jurisdiction and wanted to run somewhere else on the property and grab a gun and shoot us; we were detaining him for our safety, and to also conduct his  to conduct our investigation as to his identity and this investigation in this whole shooting.
We recognize that the officer's testimony regarding his concern for safety would be, to some extent, impeached if he failed to frisk Studemire before entering the house. This fact, however, was taken into consideration by the trial court. Further, the determinative factor is not the officer's belief, but what the objective facts present to a reasonable officer. The test for evaluating an officer's acts based on concern for safety is not the officer's subjective thoughts, but the rational inferences that a reasonably prudent person would draw under the circumstances. Snelling v. State, 591 So.2d 246 (Fla. 4th DCA 1991); Graham v. State, 495 So.2d 852 (Fla. 4th DCA 1986); United States v. Yeomans, 211 Fed.Appx. 753 (10th Cir. 2007).
Notwithstanding the possibility that Officer MacVane failed to frisk Studemire, the objective circumstances at the scene presented valid and reasonable concern for officer safety. Guns were recently fired; there were multiple guns on the premises, some loaded; the other person at the scene acknowledged firing a shotgun; there were numerous, and a variety of, shell casings on the ground; at least one weapons offense had already occurred; and firearms matching the shell casings, other than the shotgun, had not yet been found. Patently, there was a realistic threat that other weapons were outside the house and the other officers were searching the area. Additionally, Studemire was uncooperative and had already given two false names.
Therefore, we conclude that the motion to suppress and the motion for judgment of acquittal were properly denied.
As to other issues raised, we find no reversible error or abuse of discretion.
STEVENSON, C.J., concurs.
POLEN, J., dissents with opinion.
POLEN, J., dissenting.
I dissent from the majority's opinion in this case. While officer safety is always a concern, under the facts of this case I do not believe that Officer MacVane was under such fear for his safety that the use of handcuffs was justified.
Studemire moved to suppress the evidence against him at trial, and the trial court denied the motion. During the course of the trial, Studemire also moved for judgment of acquittal, arguing that the State had failed to establish corpus delicti. The trial court also denied this motion.
When reviewing a denial of a motion to suppress,
[A]ppellate courts should continue to accord a presumption of correctness to the trial court's rulings on motions to suppress with regard to the trial court's determination of historical facts, but appellate courts must independently review mixed questions of law and fact that ultimately determine constitutional issues arising in the context of the Fourth and Fifth Amendment and by *1259 extension, article I, section 9, of the Florida Constitution.
State v. Colitto, 929 So.2d 654, 662 (Fla. 4th DCA 2006) (quoting Connor v. State, 803 So.2d 598, 608 (Fla.2001)). I note that under the facts of the case, it is clear that MacVane had the requisite reasonable suspicion to conduct an investigatory stop of Studemire. This type of detention is also known as a Terry[2] stop.
[T]he second level of a police encounter involves the Terry stop or the temporary investigative "stop and frisk". A Terry stop is permissible if the detention is temporary and reasonable under the circumstances and only if the police officer has a well-founded suspicion that the individual detained has committed, is committing, or is about to commit a crime. This temporary detention is deemed to be a less intrusive invasion of privacy than a formal arrest and, therefore, may be constitutionally accomplished merely on articulable or founded suspicion of criminal activity. The founded suspicion needed to justify an investigatory stop is fact specific to each case, but it is to be based upon the totality of the circumstances as viewed by an experienced police officer . . . Additionally, the officer may detain the individual even at gunpoint and/or by handcuffs for the officer's safety without converting the Terry stop into a formal arrest.

Curtis v. State, 748 So.2d 370, 372 (Fla. 4th DCA 2000). The question in this case is whether MacVane's actions in placing Studemire in handcuffs and putting him in the back of the car escalated the detention to a de facto arrest, for which probable cause is necessary.
The use of handcuffs does not automatically turn an investigatory stop into a de facto arrest. "Courts have generally upheld the use of handcuffs in the context of a Terry stop where it was reasonably necessary to protect the officer's safety or to thwart a suspect's attempt to flee." Reynolds v. State, 592 So.2d 1082, 1084 (Fla. 1992). However, "absent other threatening circumstances . . . the handcuffs should be removed." Id. at 1085. "While handcuffs do not in and of themselves signify an arrest, they heighten the degree of intrusion." Cocke v. State, 889 So.2d 132, 134 (Fla. 4th DCA 2004).
Whether such action is appropriate depends on whether it is a reasonable response to the demands of the situation. When such restraint is used in the course of an investigative detention, it must be temporary and last no longer than necessary to effectuate the purpose of the stop. The methods employed must be the least intrusive means reasonably available to verify or dispel in a short period of time the officers' suspicions that the suspect may be armed and dangerous. Absent other threatening circumstances, once the pat-down reveals the absence of weapons the handcuffs should be removed.
Id. (internal citations omitted). Once the suspect poses no risk to the officer, the detention by handcuffs turns into an arrest (a de facto arrest) that must be supported by probable cause. See Melendez v. Sheriff of Palm Beach County, 743 So.2d 1145, 1148 (Fla. 4th DCA 1999).
Under the facts of this case, I would find that the use of handcuffs was unjustified and transformed what was a justified detention into a de facto arrest. MacVane initially testified at the suppression hearing that he was not in fear for his safety. While MacVane later mentioned safety concerns, MacVane could give no reason why, if he was concerned for his safety, he *1260 would enter Chappelle's residence to search for more guns while leaving Studemire unattended outside. Based on the officer's initial testimony and his actions, I would hold that MacVane was not in fear for his safety, and there were no "other threatening circumstances" that would justify the detention. See Cocke, 889 So.2d at 134. While the presence of numerous shell casings on the property and the officer's suspicion that there might be more guns in the vicinity could be viewed as "other threatening circumstances," MacVane admitted that this was not the case.
Since Studemire's detention amounted to a de facto arrest, unless MacVane had probable cause to arrest Studemire, the trial court should have granted Studemire's motion to suppress. MacVane admitted at the suppression hearing that prior to Studemire's confession that he was a felon, he did not have probable cause to arrest Studemire. The record does not reflect any probable cause to arrest the suspect, and therefore, the trial court should have granted the appellant's motion to suppress. See Poey v. State, 562 So.2d 449, 450 (Fla. 3d DCA 1990).
At trial, Studemire also moved for judgment of acquittal, arguing that the State had not proven, independent of his confession, that he committed a crime, and hence, there was a lack of corpus delicti. "The standard of review for a court's denial of a judgment of acquittal is de novo." Sampson v. State, 863 So.2d 404, 405 (Fla. 4th DCA 2003).
If there is competent substantial evidence to support the jury's verdict, the trial court's denial of the motion will not be disturbed on appeal. In reviewing the trial court's denial of the motion for judgment of acquittal, the appellate court must follow the well settled principle that a defendant, in moving for a judgment of acquittal, admits all facts adduced in evidence, and the court draws every conclusion favorable to the state which is fairly and reasonably inferable from that evidence.
Sapp v. State, 913 So.2d 1220, 1223 (Fla. 4th DCA 2005). In order to prove corpus delicti, the State must prove:
(1) that a crime of the type charged was committed; and (2) that the crime was committed through the criminal agency of another. In regard to the first part-that a crime was committed-each element of the relevant offense must be shown to exist. With respect to the second part-the criminal agency of another-the proof need not show the specific identity of the person who committed the crime. That is, it is not necessary to prove that the crime was committed by the defendant.
Garmon v. State, 772 So.2d 43, 46 (Fla. 4th DCA 2000). "The essential requirement appears to be that in order for the admission of the inculpatory statement there must be other evidence of the crime charged." Id. The purpose of the corpus delicti rule is to ensure that no conviction is obtained "based on `derangement, mistake or official fabrication.'" Id. (quoting State v. Allen, 335 So.2d 823, 825 (Fla. 1976)).
The State argues that there was sufficient evidence to show that a crime had been committed, i.e., a gun had been fired within the city limits. However, the State needed to present evidence that the crime actually charged took place, not just that any crime had taken place. See Garmon, 772 So.2d at 46.
To prove the crime of unlawful possession of a firearm by a convicted felon, the State needs to establish the following two elements beyond a reasonable doubt: 1) The defendant has been convicted of a felony; and 2) After the *1261 conviction, the defendant owned or had in his care, custody, possession, or control, a firearm.
Morris v. State, 869 So.2d 1264, 1267 n. 1 (Fla. 3d DCA 2004) (citing § 790.23, Fla. Stat. (2001)). In this case, while the State might not need to prove that Studemire was the felon in possession of a handgun, it needed to prove, independent of Studemire's confession, that there was a felon in possession of the handgun. See Garmon v. State, 772 So.2d at 46. The State failed to do so. MacVane failed to determine that Studemire was a felon before his detention turned into a de facto arrest, thereby precluding independent confirmation of his status as a felon. If MacVane had independently determined that Studemire was a felon, the proximity of the discovered gun to where he was standing would have been enough to establish corpus delicti. This was not the situation in the instant case. Any evidence presented by the State that Studemire was a felon, independent of his confession, was obtained as a result of the confession, and was therefore insufficient to establish corpus delicti.
On the basis of this analysis, I would find that the trial court erred in denying Studemire's motion to suppress and in denying his subsequent motion for judgment of acquittal. I would reverse Studemire's conviction.
NOTES
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[2] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).