559 So.2d 269 (1990)
Nelson SCOTT, Appellant,
v.
STATE of Florida, Appellee.
No. 88-0912.
District Court of Appeal of Florida, Fourth District.
March 28, 1990.
*271 Richard F. Rendina, Fort Lauderdale, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Alfonso M. Saldana, Asst. Atty. Gen., West Palm Beach, for appellee.
DELL, Judge.
Nelson Scott appeals from his conviction and sentence for trafficking in cocaine. We find merit in two of the eight points raised by appellant and reverse and remand for a new trial.
Based on information received from one of appellant's neighbors, the Broward Sheriff's Office placed appellant's home under surveillance and, on November 21 and 28, 1986, seized baggies from the trash outside his home. Laboratory tests of the substance in the baggies obtained on November 21 proved inconclusive because of contamination by the Valtox used to test the substance. The substance in the baggies seized on November 28 tested positive for cocaine. The sheriff's office obtained a search warrant and, on December 2, at approximately 8:20 p.m., a search team from the Broward Sheriff's Office went to appellant's residence to execute the warrant. When the officers at the front door knocked and announced their presence, they heard appellant tell them to get away from the door. They immediately opened the door with a crowbar. At about the same time as the officers opened the front door, another officer broke the bedroom window and entered the premises. One of the officers secured appellant on the floor and another officer read the search warrant. The officers found five adults in the house, including appellant. However, only appellant, the co-defendant, and their children lived at the house on a permanent basis. The officers arrested the five adults and seized the three Bahamian individuals' passports. A national network television crew videotaped the entry into the home, appellant's arrest and the search of the house.
The search of the house revealed two kilos of cocaine in three plastic baggies, business cards bearing the name of appellant's business, and spoons in a brown carry bag on a shelf in the master bedroom walk-in closet. The officers also found marijuana in a night stand next to the bed, and, on the dresser, a legal pad and two pieces of paper, which appeared to be tally sheets for narcotics. The officers also found a triple-beam scale in a box in the laundry room.
Appellant raises eight points on appeal. He contends the trial court erred: 1) when it failed to compel specific performance of his substantial assistance agreement with the state; 2) when it denied his motion to suppress evidence of the cocaine found in his home; 3) when it permitted the state to introduce into evidence part of a videotape recording showing the entry into the home and the deputies' actions in securing the premises; 4) when it permitted the state to introduce evidence concerning marijuana and a weapon found in the home; 5) when it refused to allow appellant to make the concluding argument to the jury; 6) when it denied his motion for judgment of acquittal on the charge of trafficking in cocaine; 7) when it made prejudicial comments in the presence of the jury concerning defense counsel's conduct, and; 8) when it denied his motion for a severance. We will address the points in this order.
Appellant first contends that the trial court should have required specific performance of his substantial assistance agreement with the state. The agreement provided that he would receive a three-year mandatory minimum sentence if he performed substantial assistance with the Internal Affairs Division of the Broward Sheriff's Office, and that the state attorney's office would recommend a further *272 reduction if he cooperated and gave information to the organized crime unit regarding drug traffickers. He claims that he provided the substantial assistance contemplated by the agreement but the state failed to move for mitigation. The record reveals conflicting evidence on the degree of assistance provided by appellant and does not show that the state had acted in bad faith or was guilty of overreaching when it refused to move to mitigate appellant's sentence. Therefore, we affirm the trial court's denial of appellant's motion on the authority of State v. Werner, 402 So.2d 386 (Fla. 1981); and State v. Venegas, 557 So.2d 236 (Fla. 4th DCA 1990).
Next, appellant makes several arguments to support his contention that the trial court erred when it denied his motion to suppress evidence of the cocaine found in the home. First, he claims that the affidavit given in support of the warrant lacked probable cause and contained material omissions. We find no merit in this argument. The affidavit contained relevant information concerning activities at the residence observed during surveillance by a Broward sheriff's deputy, information that the substance in the baggies found in appellant's trash on November 28 tested positive for cocaine, and information furnished to the sheriff's office by one of appellant's neighbors concerning his observations of activities at the residence. We are satisfied that the affidavit contained sufficient material facts to support the issuance of a search warrant.
We likewise find no merit in appellant's argument that the affidavit was invalid because it did not inform the trial judge that appellant fought with his neighbor approximately four weeks before the issuance of the affidavit or that the search would be videotaped by a national television crew. We find sufficient facts in the affidavit to support the search warrant without reliance on the observations of appellant's neighbor, and we fail to see how the information concerning the videotaping would have affected the validity of the warrant.
Appellant also claims error in the execution of the warrant. We are not persuaded by his argument that the evidence should be suppressed because the Broward Sheriff's Office permitted a television crew to enter the home during the execution of the warrant. Appellant has not shown how the presence of the video crew adversely affected the search or that he suffered prejudice as a result of their presence. Our conclusion, however, is limited to the validity of the execution of the warrant and should not be construed as an opinion on appellant's argument that the presence of the television crew infringed upon his right of privacy.
Appellant's final argument on this point concerns validity of the search team's entry into the home. He argues that the trial court should have suppressed evidence of the discovered cocaine because a sheriff's officer entered through a rear window prior to or simultaneously with another officer's knock and announcement of his presence at the front door of the home. The search team's testimony conflicts with appellant's version of the entry into the home, and the videotape of the entry into the home does not conflict with the trial court's findings concerning the execution of the warrant. Appellant has failed to demonstrate that the trial court erred when it denied his motion to suppress on this ground.
Appellant contends in his third point on appeal that the trial court erred when it permitted the jury to hear the audio on the part of the videotape introduced by the state. He argues that the deputies' comments unfairly prejudiced his case and the prejudice far outweighed any probative value that the tape might have had. We agree.
The part of the tape played by the state showed the entry into the home and the deputies' actions in securing the premises.[1] Appellant bases his claim of prejudice on the following excerpt from the audio portion of the tape:

*273 DEPUTY: Okay, I want everybody to stay here for a minute. Give me the search warrant. Are you a U.S. citizen or are you a Bahamian?
APPELLANT: I'm Bahamian, but I am a permanent resident.
DEPUTY: Do you understand English?
APPELLANT: Yes.
DEPUTY: I have a search warrant for your residence for cocaine.
APPELLANT: I heard it.
DEPUTY: You heard that? Okay.
APPELLANT: We heard about it.
DEPUTY: We have been getting alot of complaints about you. This is no zoning for a supermarket for cocaine.
So, we have a search warrant for cocaine.
SECOND DEPUTY: Let her take the baby. She won't hurt the baby.
CO-DEFENDANT: Why?
SECOND DEPUTY: Because there is cocaine dealing going to hear, that's why.
She is better off with her than she is with you 
Appellant claims the trial court should have excluded that part of the tape which revealed his citizenship and understanding of English because these questions and answers occurred before the deputies informed him of his Miranda rights. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The state correctly responds that these questions and answers related only to appellant's ability to understand English so that the search warrant could be read to him. Therefore, these statements did not unfairly prejudice appellant.
On the other hand, the statements concerning the number of complaints against appellant, the lack of zoning for a supermarket for cocaine and the statements concerning cocaine dealing going on in the home should have been excluded as inadmissible hearsay. The comments made by the deputies did not prove or disprove any material fact and the trial court should have excluded them because of their lack of relevancy and the substantial danger of unfair prejudice to appellant. See Pulliam v. State, 446 So.2d 1172 (Fla. 2d DCA 1984); § 90.403, Fla. Stat. (1987).
We also find merit in appellant's contention that the trial court erred when it permitted the state to present evidence concerning marijuana found in a dresser and the presence of a weapon. Appellant was not tried for possession of the marijuana or the firearm, and the evidence should have been excluded as impermissible Williams Rule evidence. Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). Since we cannot say that the admission of the audio portion of the videotape and the evidence about the presence of marijuana and the weapon constituted harmless error beyond a reasonable doubt, we must hold that appellant is entitled to a new trial.
We find no merit in appellant's fifth point on appeal. The trial court did not err when it concluded that appellant offered testimony on his own behalf  by playing the remainder of the videotape  and therefore was not entitled to make the concluding argument. See Rule 3.250, Fla. R.Crim.P. Although appellant objected to the content of the part of the tape played by the state, he made no contemporaneous request to play other parts of the tape to bolster his own case. We are not persuaded by appellant's contention that his request (after the state had rested its case) to play the remainder of the videotape falls within section 90.108, Florida Statutes (1987). That section provides:
When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement that in fairness ought to be considered contemporaneously. An adverse party is not bound by evidence introduced under this section. (emphasis supplied).
Since appellant opted to introduce other parts of the tape in his case, the trial court did not abuse its discretion when it refused to grant him final closing argument.
Finally, appellant contends the state failed to present sufficient evidence to show that he had constructive possession *274 of the cocaine. He bases his argument on the fact that the home was occupied by five adults, and the deputies did not find the cocaine in plain view nor did they find any residue of cocaine elsewhere in the home.
The record contains evidence from which the jury could find that appellant and the codefendant were the primary residents of the house, and that they jointly occupied and controlled the master bedroom and adjoining closet.[2] As this court stated in Wale v. State, 397 So.2d 738 (Fla. 4th DCA 1981):
If the place in which the contraband is found is not in the exclusive possession of the accused, but only in his joint possession, his knowledge of the presence of the contraband on the premises and his ability to maintain control over it will not be inferred, but must be established by extra proof. Such proof may consist of evidence establishing that the accused had actual knowledge of the presence of the contraband in the place where it is found, or circumstantial evidence from which a jury might properly infer that the accused had knowledge of the presence of the contraband.
Id. at 740.
While knowledge and control over the contraband may be established by either direct or circumstantial evidence, the circumstantial evidence relied upon must be inconsistent with, and exclude every reasonable hypothesis of innocence. Murphy v. State, 511 So.2d 397 (Fla. 4th DCA 1987). In State v. Law, 559 So.2d 187 (Fla. 1989), the supreme court clarified the standard of review for the sufficiency of the evidence for a conviction based wholly on circumstantial evidence:
Where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence. McArthur v. State, 351 So.2d 972 (Fla. 1977); Mayo v. State, 71 So.2d 899 (Fla. 1954). The question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine, and where there is substantial, competent evidence to support the jury verdict, we will not reverse. (citations omitted).
... .
It is the trial judge's proper task to review the evidence to determine the presence or absence of competent evidence from which the jury could infer guilt to the exclusion of all other inferences. That view of the evidence must be taken in the light most favorable to the state. Spinkellink v. State, 313 So.2d 666, 670 (Fla. 1975), cert. denied, 428 U.S. 911 [96 S.Ct. 3227, 49 L.Ed.2d 1221] (1976). The state is not required to "rebut conclusively every possible variation" of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events. See Toole v. State, 472 So.2d 1174, 1176 (Fla. 1985). Once that threshold burden is met, it becomes the jury's duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt. (footnote omitted).
Id. 559 So.2d at 188-189.
Here, the deputies discovered two kilos of cocaine, together with spoons and two business cards bearing the name of appellant's business, in a brown carry bag on a shelf in a closet in the master bedroom. In addition, the deputies discovered a triple-beam scale in a box in the laundry room and a legal pad and two sheets of paper, which appeared to be tally sheets, in plain view on a dresser in the master bedroom. We find this evidence sufficient to create a jury question concerning appellant's constructive possession of the cocaine. Therefore, we hold that the trial court did not err when it denied appellant's motion for judgment of acquittal.
*275 Since this case must be remanded for a new trial, we need not address appellant's arguments that the trial court erred when it commented in the presence of the jury on defense counsel's conduct during the trial and when it denied appellant's motion for a severance.
Accordingly, we reverse and remand for a new trial.
REVERSED and REMANDED.
STONE, J., and FRANK, RICHARD H., Associate Judge, concur.
NOTES
[1] The codefendant, Minnie Jackson, also played the tape without sound in her case.
[2] We note that the trial court properly instructed the jury on joint possession. The codefendant in this case, Minnie Jackson, was also found guilty, on a constructive possession theory, of trafficking in cocaine. This court, at Jackson v. State, 541 So.2d 1189 (Fla. 4th DCA 1989), affirmed her conviction.