929 So.2d 654 (2006)
STATE of Florida, Appellant,
v.
Christian COLITTO and Gisselle Somoza, Appellees.
Nos. 4D05-635, 4D05-704.
District Court of Appeal of Florida, Fourth District.
May 17, 2006.
*655 Charles J. Crist, Jr., Attorney General, Tallahassee, and Richard Valuntas, Assistant Attorney General, West Palm Beach, for appellant.
Jose Izquierdo of Bradford M. Cohen & Associates, Fort Lauderdale, for appellee Somoza.
Michael A. Gottlieb, Fort Lauderdale, for appellee Colitto.
EN BANC
KLEIN, J.
The issue we are resolving is whether two trash pulls, which revealed cannabis, provided probable cause for issuing a search warrant for defendants' home. The trial court concluded that the search warrant should not have been issued and suppressed the evidence. We reverse.[1]
The affidavit on which the search warrant was based reflected that the Sunrise Police Department's narcotics unit had received information that Colitto and Somoza, who resided at a specified address, were involved in the trafficking of cocaine and cannabis. The affidavit did not show the source of the information. The officer conducted two trash pulls from curbside garbage cans, seven days apart, both of which revealed cannabis residue, seeds and stems. The trash bags from both pulls also contained mail addressed to defendants' residence. The search warrant was issued one week after the second trash pull and produced evidence which resulted in charges of trafficking in cocaine and possession of cannabis with intent to sell.
Defendants rely heavily on Raulerson v. State, 714 So.2d 536 (Fla. 4th DCA 1998); however, Raulerson is distinguishable in that there was only one trash pull in that case. We held that this was insufficient to indicate a fair probability that cannabis would be found in a search. We distinguished State v. Jacobs, 437 So.2d 166 (Fla. 5th DCA 1983), in which it was held that an affidavit based on two separate trash pulls was sufficient for probable cause. In Jacobs there was information received from a confidential source, and *656 two trash pulls three weeks apart, both of which revealed cannabis. The trial court suppressed and the fifth district reversed, explaining:
The fact that marijuana and cannabis seeds were found on two separate occasions within one month's time suggests a continuing violation of the drug laws and indicates a "fair probability" that marijuana or cannabis would be found in the house. We conclude that the judge who issued the search warrant had a substantial basis for determining that probable cause existed and thus the court below erred in suppressing the evidence.
437 So.2d at 168.
Although in Raulerson we held that one trash pull based on an anonymous tip was insufficient, we have since found that a single trash pull combined with other information was sufficient. In Baker v. State, 762 So.2d 977 (Fla. 4th DCA 2000), an officer received an anonymous tip that cocaine was being sold in small clear plastic baggies tied with green twisties at the defendant/suspect's home. The caller then met with the officer in person. A single trash pull then revealed cut plastic straws and plastic baggies, both of which contained cocaine traces, and green twisties. We held, even though there was only one trash pull, the fact that the clear baggies and green twisties were found was consistent with the specific information from the caller, and that there was probable cause for the search. Similarly, in State v. Mayes, 666 So.2d 165 (Fla. 2d DCA 1995), there was only one trash pull, but the police and a citizen had observed traffic to and from defendant's home at all hours. The court held that probable cause existed.
The dissent states that our standard of review is de novo. Where, as in this case, the only issue is the sufficiency of the facts set forth in an affidavit to support a search warrant, the standard of review was established in Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983):
Similarly, we have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." (citation omitted)
In addition, if the dissent is asserting that finding cannabis seeds and stems in the trash does not establish probable cause for trafficking in cannabis and cocaine, Gates does not require that specificity:
The task of the issuing magistrate is simply to make a practical commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. (emphasis added.)
Gates, 462 U.S. at 238, 103 S.Ct. 2317. The issue before the magistrate was not whether there was probable cause that evidence of trafficking would be found, but whether there was probable cause that evidence of a crime would be found. See also § 933.18(5), Fla. Stat. (2003) (authorizing search warrants for private dwellings where "narcotics or drug abuse" laws are being violated).
Because the affidavit in this case did not describe the source of the information received by the police, we give it no more importance than an anonymous tip. We conclude, however, that this information and the two trash pulls within two weeks of the issuance of the warrant provided probable cause. Jacobs. We accordingly reverse the order of suppression.
*657 STEVENSON, C.J., STONE, WARNER, POLEN, SHAHOOD, GROSS, TAYLOR, HAZOURI, and MAY, JJ., concur.
FARMER, J., dissents, in part II of which GUNTHER, J., concurs.
FARMER, J., dissenting.

I. Foreword
Are words the author of our thoughts? If I casually use a term having a deprecatory or disparaging meaning to describe something, do I thereby unconsciously constrain my analysis of that act? Does human thought, as Gottlob Frege posed, depend on language? Or does it work another way? If our thoughts precede our words, is the outcome ordained by the words stating the thoughts?[2] Do our linguistic symbols consciously correspond to internal mental preconceptions, or as Liebniz said, is language "the best mirror of the human mind"?
For me the answer to these inquiries is that, in some way, the words we use to characterize an idea signal our mental processes. Here in the opening sentence of the majority opinion, right off the bat, the outcome is foreshadowedor shall I say betrayedby the belittling term used to characterize the police conduct. Thus the ending is foretold.
The majority is not here considering the legal consequences of a police search and seizure. Oh no. For them this case involves only a trash pull. And if all that is involved is just a trash pull, well, we can see where this is going. A little old trash pull or two certainly isn't going to have the legal significance of an out-and-out, warrantless police search of private property from a home. We all know the Fourth Amendment deals with searches, not pulls. And if a pull is not a search, it follows that not even a founded reasonable suspicionand certainly no probable causeis needed to validate it. Quod erat demonstrandum!
Pardon me if I cannot buy into this. To my mind, it is a pretty serious thing to have police making unfounded searches of a private citizen's residential trash. Yes, I am aware that for Fourth Amendment purposes the Supreme Court thinks people have abandoned and have thus consented to a search of the solid waste they place outside their homes for the waste removal authorities.[3] But the Supreme Court is appallingly mistaken if they think people do not regard even the waste placed for collection as very, very private. The *658 placement on the curb reflects only that its use to the owner is over. It does not follow that the end of use means the end of privacy. Disposing of solid waste does not convey an intention to have the whole worldespecially the policesearching and analyzing it. A homeless vagrant looking for food, maybe, but not the police. Technology may have made some things transparent to government eyes, but the natural expectation of privacy people have even in the used up matérial of their private lives should not yet be deemed a relic in some museum of lost values.
The power of the State to seize and search private trash without any legal basis seems to me but one more manifestation of Government's long obsession with its residents' pharmacological pursuits. In keeping with that obsession, this case adds one more compromise with our essential liberty of personal privacy, laying wager on a dream that Government might yet salvage something of its War on Drugs.[4] This mania of the last four decades has been a costly failure. As Prohibition did, it founders on the reality that many humans will crave and use forbidden substances, legal or not. Like other pickpockets in the crowd while the condemned ascends the guillotine, there will ever be those to supply these illicit apples for a priceno matter the penalties, even the loss of paradise. Yet we obstinately go on squandering even more weapons of mass deconstruction of personal liberties, and all in the name of a metaphor! We might as well expend law's resources in a campaign to erase original sin. As a citizen, I am discouraged (if not surprised) that "trash pulls" mining for evidence of possible crimes are so fixed in the legal lexicon that Judges would find not even a founded suspicion necessary for such a search.
What follows, then, is the panel opinion I wrote in the husband's case. It explains in conventional legal terms why I think these unfounded searches should not be used to convict either of these defendants.

II. Legal Analysis in Colitto
These cases were filed as separate appeals even though the co-defendants are husband and wife. The appeals were assigned to different panels of this court. As sometimes happens under our policy of random assignment, different panels arrived at conflicting outcomes,[5] so the whole court took them up en banc. The panel decision in the husband's case has now been rejected by a majority of this court.
Defendant and his wife, Gisselle Somoza, were charged by information with trafficking in cocaine and possession of cannabis with intent to sell or deliver. Both filed a pre-trial motion to suppress the fruits of a search warrant. They argued that the affidavit for the warrant was deficient because it failed to show that police had probable cause to believe that he and his wife were guilty of trafficking or any intent to sell or deliver marijuana as suggested. The trial judge held an evidentiary hearing and at the conclusion announced his decision to grant the motion. The State appeals.
Testimony at the hearing on the motion showed that the case began when the officer was contacted by a fellow police officer who passed along an unfounded tip about *659 possible drug trafficking at defendant's residence. Defendant Colitto and his wife resided at the address with two other people.
The officer conducted a surveillance of the house. The only activity he reported in the affidavit was that defendant placed garbage cans curbside on two separate occasions. The first time he placed three bags in the cans, and a search of the trash revealed cannabis residue, seeds and stemsthe quantity unknown. Mail in the bags was addressed to that same residence. Seven days later, defendant placed four garbage bags in the trash cans, and a search once again turned up cannabis residue, seeds and stems, quantity unknown, along with mail addressed to the residence.
The officer filed an affidavit for a warrant stating that the police had received information that defendants were involved in trafficking cannabis and cocaine at the residence, and relating the results of the garbage searches.[6] In his testimony at the hearing, the officer conceded that his only evidence of criminal activity came from the two garbage searches. The officer further admitted that he did not include in the affidavit anything about the tip passed along by his fellow officer. He also omitted information regarding defendant's arrest record, and furnished no information about the mail found in the garbage. The officer conceded that there was nothing suggesting the presence of cocaine in the house. He acknowledged that he had no contact with the other officer's confidential informant and could furnish nothing about the informant's veracity or reliability. Based solely on the information in the officer's affidavit regarding the trash searches, the magistrate issued a warrant for marijuana and all controlled substances.
At the conclusion of the motion to suppress hearing, the trial court concluded the following:
[B]asically, this boils down to two trash [searches] within a week's time in which there was residue. . . . There was candid testimony there was nothing observed during the period of surveillance with regard to any unusual traffic or activity at the residence that would in any way have been consistent with any kind of illegal narcotic activity.
Even though I understand the fellow officer rule as it relates to probable cause in terms of Norm Serfice, there's nothing in the affidavit at all, and he's not required to disclose certainly who the informant is, but there's nothing in there that gives any underlying information of what was received, just that information was received.
The affidavit says there was mail addressed to the residence, but it doesn't identify who the addressee was on any of the mail that may have been retrieved from the trash [searches]. So I don't see anything inappropriate about finding in one's trash mail addressed to the address that the trash is from.
I just see the probable cause affidavit to be legally insufficient for purposes of issuing the warrant. So I'm going to grant the motion.
Essentially the State argues that the single fact of finding marijuana residue in defendant's trash on two separate occasions a week apart is sufficient to establish probable cause to support the crime of trafficking in controlled substances, including cocaine. To assess this contention [I] *660 begin with established law. All questions of probable cause depend on the totality of the circumstances. Maryland v. Pringle, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) ("The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances."); Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) (totality of circumstances must be taken into account in assessing reasonableness of Fourth Amendment issues); United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) ("The concept of reasonable suspicion, like probable cause, [e.s.] is not `readily, or even usefully, reduced to a neat set of legal rules'."); Tennessee v. Garner, 471 U.S. 1, 8-9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (question is "whether the totality of the circumstances justified a particular" search); Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ("we conclude that it is wiser to abandon the `two-pronged test' established by our decisions in Aguilar and Spinelli. In its place we reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable cause determinations." [f.o.] [c.o.]).
In assessing the totality of circumstances for probable cause, courts must not rest their decision on a single factor, give extra weight to one fact, or consider any single fact in isolation from others; instead courts must consider the entire set of reasonsthe mosaic, as some have described itoffered to support the warrant. Vieth v. Jubelirer, 541 U.S. 267, 291, 124 S.Ct. 1769, 158 L.Ed.2d 546 (2004) (the "totality-of-the-circumstances" means that "all conceivable factors, none of which is dispositive, are weighed with an eye to ascertaining [the issue in question]."); United States v. Banks, 540 U.S. 31, 42, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003) (condemning as a distortion of the `totality-of-the-circumstances' principle, the "resort to pigeonholes" in the execution of a search warrant); United States v. Drayton, 536 U.S. 194, 207, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002) (holding that totality of the circumstances means not giving extra weight to any specific factor); United States v. Arvizu, 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (considering some factors in isolation from others fails to comport with totality of circumstances test); Florida v. Bostick, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) ("the Florida Supreme Court rested its decision on a single factthat the encounter took place on a busrather than on the totality of the circumstances. We remand so that the Florida courts may evaluate the seizure question under the correct legal standard."). "There are so many variables in the probable cause equation that one determination will seldom be a useful `precedent' for another." Gates, 462 U.S. at 239 n. 11, 103 S.Ct. 2317.[7]
As these citations reveal, the totality-of-the-circumstances principle originated in Gates, a case also involving, as here, a tip leading to the discovery of illegal substances in a home. Until the decision in Gates, an informant's tip about possession of controlled substances had to satisfy a dual inquiry, called the Aguilar-Spinelli rules,[8] to satisfy the requirement of probable cause:
"For present purposes, the Aguilar-Spinelli rules can be summed up as follows. *661 First, an affidavit based on an informer's tip, standing alone, cannot provide probable cause for issuance of a warrant unless the tip includes information that apprises the magistrate of the informant's basis for concluding that the contraband is where he claims it is (the `basis of knowledge' prong), and the affiant informs the magistrate of his basis for believing that the informant is credible (the `veracity' prong). Second, if a tip fails under either or both of the two prongs, probable cause may yet be established by independent police investigatory work that corroborates the tip to such an extent that it supports `both the inference that the informer was generally trustworthy and that he made his charge on the basis of information obtained in a reliable way'." [c.o.]
Gates, 462 U.S. at 267-68, 103 S.Ct. 2317 (White, J., concurring). Gates receded from the Aguilar-Spinelli rules to the extent that they would invalidate a search not complying with their requirements and substituted the totality of the circumstances test. In explaining probable cause after the adoption of totality of the circumstances test in place of the Aguilar-Spinelli rules, Justice Rehnquist stated that:
"The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a `substantial basis for ... conclud[ing]' that probable cause existed."
Gates, 462 U.S. at 238-39, 103 S.Ct. 2317. In a telling example, Justice Rehnquist explained: "[a]n officer's statement that `affiants have received reliable information from a credible person and believe' that heroin is stored in a home, is ... inadequate." Gates, 462 U.S. at 239, 103 S.Ct. 2317.
The events in this case began with precisely the "inadequate" example posed by Justice Rehnquist. The first officer had received a tip that defendant was trafficking in illegal substances. The investigating officer's affidavit recites that "as a result of receiving this information" from the first officer he initiated surveillance of the home. He twice retrieved defendant's trash on successive weeks, finding only cannabis residue. Solely on the basis of those facts he sought and obtained the search warrant for trafficking in controlled substances, including cocaine.
As the trial judge explained in suppressing the evidence:
"[B]asically, this boils down to two trash [pulls] within a week's time in which there was residue. . . . There was candid testimony there was nothing observed during the period of surveillance with regard to any unusual traffic or activity at the residence that would in any way have been consistent with any kind of illegal narcotic activity.
"Even though I understand the fellow officer rule ... there's nothing in the affidavit at all, and he's not required to disclose certainly who the informant is, but there's nothing in there that gives any underlying information of what was received, just that information was received."
The trial judge attached no significance to the mail in the trash addressed to the same address. Because there was nothing stated in the affidavit about the results of any investigation conducted by either officer, the tip necessarily was not considered. In this case, the court was effectively left *662 with a probable cause mosaic consisting of a single facet: an unknown quantity of cannabis residue found in two trash searches conducted without any basis.
Our standard of review is de novo. See Connor v. State, 803 So.2d 598, 608 (Fla. 2001) ("[F]or the same underlying policy reasons enunciated in Ornelas and Thompson, appellate courts should continue to accord a presumption of correctness to the trial court's rulings on motions to suppress with regard to the trial court's determination of historical facts, but appellate courts must independently review mixed questions of law and fact that ultimately determine constitutional issues arising in the context of the Fourth and Fifth Amendment and, by extension, article I, section 9 of the Florida Constitution." [f.o.]); see also Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (determinations of reasonable suspicion to conduct investigatory stop and probable cause to perform warrantless search should be reviewed de novo on appeal). See also Riggs v. State, 918 So.2d 274, 278 (Fla.2005) (When reviewing rulings on motions to suppress, we "accord a presumption of correctness ... to the trial court's determination of historical facts, but [we] independently review mixed questions of law and fact that ultimately determine constitutional issues.").
The "substantial basis" comment by Justice Rehnquist from Gates quoted above[9] does not mean that a more deferential form of review other than de novo is required. The "substantial basis" to which he referred is simply a form of the "substantial competent evidence" standard that we apply to factual findings. Even if there is evidence to support the factual basis for the probable cause finding, Ornelas requires that the reviewing court make its own application of the law to test the magistrate's conclusion that those facts amount to probable cause. In short, it is still de novo review that is required.
We have usually insisted on something more than unfounded trash searches in our cases to support a search of a home. In Raulerson v. State, 714 So.2d 536, 537 (Fla. 4th DCA 1998), for example, we refused to base the reasonableness of a search on the number of times the police had retrieved defendant's trash. We said:
The instant case is distinguishable from State v. Jacobs, 437 So.2d 166 (Fla. 5th DCA), rev. dismissed, 441 So.2d 632 (Fla.1983), where the court held an affidavit based on evidence retrieved in two separate trash pulls was sufficient to support a finding of probable cause. The instant case is also distinguishable from those cases involving discovery of narcotics from a one-time trash pull, where additional information was included in the affidavits which suggested patterns of continuous drug activity sufficient to support a finding of probable cause to search. For example, in State v. Mayes, 666 So.2d 165 (Fla. 2d DCA 1995), the affidavit contained not only information of a one-time trash pull leading to the discovery of narcotics, but also of "the officers' observation of and the `concerned citizen's' report of traffic to and from the [defendant's] home at all hours of the day and night. . . ." Id. at 165. Similarly in Scott v. State, 559 So.2d 269 (Fla. 4th DCA 1990) the affidavit contained not only information of a one-time trash pull leading to the discovery of narcotics, but also "information concerning activities at the [defendant's] residence observed during surveillance *663 by a Broward sheriff's deputy . . . and information furnished to the sheriff's office by one of appellant's neighbors concerning his observations of activities at the residence." Id. at 272.
714 So.2d at 537. In other words, our decision did not turn on the number of trash searches but on the character of all the cognizable information known by the police.
Similarly, in Gesell v. State, 751 So.2d 104, 105-06 (Fla. 4th DCA 1999), we assessed the nature and character of the cognizable information known to police:
In this case, as in Raulerson, the officers did not conduct any surveillance or independent follow-up investigation to corroborate the anonymous tip, perform additional garbage pulls, or develop any other facts to show a pattern of continuous drug activity and establish a fair probability that cannabis would be found on the premises. Moreover, there was nothing found in the contents of the trash here that, in and of itself, supported a reasonable conclusion that additional contraband would be found in the house.
751 So.2d at 105-06. On the other hand, in State v. Carbonell, 816 So.2d 1169, 1170 (Fla. 4th DCA 2002), where there was a single trash search, the officer had also conducted a month long investigation, observing a "large volume" of "short stay" guests, some of them sitting on the porch of the premises smoking what appeared to be marijuana, and guests leaving the premises clutching clear plastic bags containing a white, powdery substance. Similarly, in Baker v. State, 762 So.2d 977, 978 (Fla. 4th DCA 2000), also involving a trash search and an anonymous tip, the tipster described in detail that "customers" were leaving defendant's home with "small clear plastic baggies tied with green twisties." The trash search revealed plastic baggies with cut edges, and green twisties, in addition to cocaine residue. In short, the anonymous tip was corroborated by evidence found in the trash showing more than residue, thereby investing the tip with indicia of truth and reliability. We concluded that the defendant had failed to show clear error in the trial court's denial of the motion to suppress. The same rationale supports State v. Mayes, 666 So.2d 165 (Fla. 2d DCA 1995). After receiving information from a concerned citizen who had seen traffic come and go throughout the day and night, the police conducted surveillance of the defendant's home. They themselves observed traffic to and from the home at all hours of the day and night. We specifically cited Gates and the totality of the circumstances test for reasonableness of searches under the Fourth Amendment.
The only case sustaining a search on the basis of unfounded trash searches, without more, is State v. Jacobs, 437 So.2d 166, 167 (Fla. 5th DCA 1983), which we distinguished in Raulerson. There the court explained its reasoning thus:
"While the federal cases clearly provide more information regarding the likelihood that a criminal offense was being committed, the conclusion does not necessarily follow that the facts here are insufficient to establish probable cause. The fact that marijuana and cannabis seeds were found on two separate occasions within one month's time suggests a continuing violation of the drug laws and indicates a `fair probability' that marijuana or cannabis would be found in the house."
437 So.2d at 168. But neither State v. Stevenson, 707 So.2d 902 (Fla. 2d DCA 1998), nor Scott v. State, 559 So.2d 269 (Fla. 4th DCA 1990), go as far as Jacobs. In Stevenson the detective first investigated the subject and found that he had previously *664 been arrested for possession of a controlled substance; the tip came from a neighbor who identified another person by name as also being involved, a fact verified by the waste. In Scott, the affidavit included details of observation from surveillance, as well as information from a neighbor. Suffice it to say that Jacobs includes no such details or information. The single fact supporting the warrant was an unfounded search of trash.
With all due respect to the Fifth District, its rationale cannot be squared with the part of Aguilar left untouched in Gates. We should be in conflict with Jacobs.
NOTES
[1] Originally the appeals involving Somoza and Colitto, who are husband and wife, were separate cases assigned to different panels. The panel in Colitto affirmed without opinion on November 2, 2005; however, that opinion was withdrawn when the Somoza panel decided to reverse. We then consolidated the cases and resolved the conflict with this en banc opinion.
[2] "The essence of all power is the right to define with authority, and the major stake of the power struggle is the appropriation ... of the right to define." Zygmunt Bauman, THE INDIVIDUALIZED SOCIETY 208 (2001).
[3] The Supreme Court's view that trash placed curbside should be treated as legally abandoned property is a conclusion unconnected to any major premise. People do not place their solid waste at the curb because they have decided to lay it bare before the world. They do so because the law bars them from disposing of solid waste in any other way. See § 187.201(12)(b)2 (providing for countywide system of collection and removal of all solid waste), and ch. 403, part IV, Fla. Stat. (2005) (resource recovery and management).

In bygone times, people were free to burn or bury this waste for themselves. Now solid waste must be removed from premises, and only the entity designated by law may do so. Hence people are not abandoning waste for public inspection by placing it curbside. They are instead disposing of it in the manner required by law. But it is one thing to present it for waste disposal, and quite another to open it up for public inspection. The fact that they are complying with waste removal laws hardly means that they want or expect the police to rummage through it for possible evidence of crime. Their expectation is that it will be burned or buried in a landfill without anyone seeing it.
[4] Back to linguistics and meaning for a moment. It should not take much reflection today to see that characterizing an endeavor as a war on something is calculated to paint it with a nobility of purpose and a tolerance of tactics that otherwise would be questioned or even condemned.
[5] See, e.g., Raulerson v. State, 724 So.2d 641 (Fla. 4th DCA 1999) (involving husband and wife co-defendants and searches of their trash, with separate panels reaching conflicting outcomes).
[6] Although he then ran a background check on defendant, which turned up a previous arrest for trafficking cocaine and possession of marijuana, he chose not to include that information in his affidavit. We therefore do not consider this information.
[7] "But there are exceptions." Ornelas v. United States, 517 U.S. 690, 698, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). None are applicable here.
[8] Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 416, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
[9] "The duty of a reviewing court is simply to ensure that the magistrate had a `substantial basis for ... conclud[ing]' that probable cause existed." Gates, 462 U.S. at 238-39, 103 S.Ct. 2317.