849 So.2d 1154 (2003)
Heath BAGGETT, Appellant,
v.
STATE of Florida, Appellee.
No. 2D01-2291.
District Court of Appeal of Florida, Second District.
July 18, 2003.
*1155 James Marion Moorman, Public Defender, and Douglas S. Connor, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Richard M. Fishkin, Assistant Attorney General, Tampa, for Appellee.
SILBERMAN, Judge.
Heath Baggett appeals his judgment and sentences for burglary of a dwelling and grand theft and contends that the trial court erred in denying his motion to suppress evidence. We agree and reverse because the evidence was obtained as the result of an illegal detention.
Troy Young, a police officer in Lakeland, testified at the suppression hearing. On October 14, 2000, while he was assisting another officer in a traffic stop, an unidentified motorist drove up next to the officers. That motorist stated that he had seen a white man with dark clothing acting suspiciously. The motorist had observed the man go into a nearby wooded area, bring out a bag and set it down, then return into the woods and bring out another bag. Officer Young could not remember any other information given by the motorist.
Officer Young testified that he was aware from an earlier briefing that there had been a string of burglaries in the mobile home parks located on the southwest side of Lakeland. At least one white male was involved in the burglaries, and a red flatbed pickup was described as the perpetrator's vehicle.
Officer Young drove to a nearby store, anticipating that the man with the bags would have gone there. As he pulled into the parking lot, he observed Baggett walk around the corner with two large, paper grocery bags under his arms. Baggett went into the convenience store, placed the bags on the counter, and walked to the coolers.
Officer Young stated that he watched Baggett walk into the store and that he felt Baggett was acting suspiciously because Baggett avoided eye contact with him. Officer Young, who was in uniform, walked into the store. One bag was open, and he looked into it and saw a VCR. He could not see if there were other items in the bag. Officer Young went up to Baggett, identified himself, and stated that he "needed" Baggett to come outside.
Once outside, Officer Young told Baggett that he was being detained for suspicion of burglary. Officer Young testified that at that point, Baggett was not under arrest, but he was not free to leave. He handcuffed Baggett for "officer safety reasons" because of the way Baggett "was *1156 acting suspicious." He read Baggett the Miranda[1] warnings and questioned him. Baggett remained in handcuffs throughout the encounter.
In response to Officer Young's questioning, Baggett stated that the VCR was his but that he found the other items. He later stated that he also found the VCR. When asked where he found the items, Baggett pointed in the direction of the wooded area and the mobile home park. A second officer then retrieved the bags from the store, opened the one that did not contain the VCR, and removed a pill bottle from it. Officer Young testified that the other officer looked in the bags to determine who owned the contents. The pill bottle had a name on it, and the officer was able to locate an address in the mobile home park based on the name and a records check. Another officer went to the address and determined that there had been a burglary. Officer Young acknowledged that when he first approached Baggett, he had no information that the mobile home located at the address had been burglarized, or that the VCR may have been stolen.
Officer Young testified that "no more than 10 minutes or so" had passed from when he initially detained Baggett to when he received confirmation of a burglary. He stated that he then arrested Baggett for "suspicion of burglary." An inventory of the bags revealed various items that were subsequently linked to the burglary of the mobile home.
The second officer testified that when he retrieved the bags, one was closed and he had to open it to look inside and retrieve the pill bottle. He did not ask permission from Baggett to search the bags. He also stated that when the briefing had been given at the police department, there was no description of a suspect, only a description of a red pickup truck.
Baggett was charged with burglary of a dwelling and grand theft. After his motion to suppress was denied, he pleaded no contest and reserved his right to appeal the motion to suppress. In this appeal, he argues the trial court should have granted his motion to suppress because he had been illegally detained and the bags were searched as a result of his illegal detention. We agree.
In the absence of probable cause for an arrest, officers may initiate an investigatory stop if they have a reasonable suspicion that the person to be stopped is engaged in criminal activity. Grant v. State, 718 So.2d 238, 239 (Fla. 2d DCA 1998). When a tipster alleges criminal conduct but only describes innocent details of identification that are not incriminating or indicative of criminal behavior, reasonable suspicion may be established through independent police investigation. See J.L. v. State, 727 So.2d 204, 206-07 (Fla.1998), aff'd, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). The investigation must reveal additional suspicious circumstances and not simply verify innocent details. Id. at 207.
Here, the tip that led to Baggett's detention came from an unknown individual who drove up to the police. Even if the trial court considered the tip as coming from a citizen informant, whose reliability is at the higher end of the reliability scale, see State v. Maynard, 783 So.2d 226, 230 (Fla.2001), the tip contained no information as to possible criminal activity or any link to the past burglaries that had occurred in the area. Although the police believed that a white man and a red pickup truck may have been involved in the burglaries, neither the tip nor Officer Young's observation *1157 that Baggett avoided making eye contact is suggestive of any criminal conduct or linked Baggett to any burglaries or to any vehicle. Based on the evidence presented at the suppression hearing, the stop of Baggett was not justified because the circumstances did not create a reasonable suspicion that Baggett was involved in criminal activity. See Goss v. State, 744 So.2d 1167, 1168 (Fla. 2d DCA 1999).
Baggett also argues that even if the initial detention had been proper, it turned into a de facto arrest without probable cause because the police handcuffed him and read the Miranda warnings to him, kept him in handcuffs with no articulated reason to do so, searched the bags, and unreasonably detained him without anything more than an assumption that he might be a burglar. Again, we agree.
Officer Young expressed no specific concerns regarding officer safety to support handcuffing Baggett. See Reynolds v. State, 592 So.2d 1082, 1084-85 (Fla. 1992); Johnson v. State, 813 So.2d 1027, 1028-29 (Fla. 3d DCA 2002). Moreover, the testimony reflects that there was no pat-down conducted of Baggett to determine whether he was armed, and there was no evidence that threatening circumstances existed to justify keeping Baggett in handcuffs throughout the detention. See Reynolds, 592 So.2d at 1085. Although the State suggests the detention was reasonable, the State simply did not meet its "burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Based on all of the circumstances, we conclude that the officer's further detention of Baggett by placing him in handcuffs was also illegal.
Finally, the State argues that because Baggett denied ownership of the property contained in at least one of the bags, he lacked standing to contest a search of the bag. See State v. Brown, 412 So.2d 24, 25 (Fla. 4th DCA 1982). "However, an unconstitutional seizure or arrest which prompts a disclaimer of property vitiates the disclaimer." State v. Daniels, 576 So.2d 819, 823 (Fla. 4th DCA 1991). To determine whether a disclaimer is voluntary, courts must look to whether there is a causal nexus between the unlawful police conduct and the defendant's disclaimer of the property. See id.
Baggett was not asked about the bags until after Officer Young told him to exit the store, handcuffed him, and gave the Miranda warnings. Baggett stated that the VCR was his and that he found the other items, and he later stated that he also found the VCR. The second officer then retrieved and searched the bags. Baggett's statements regarding the bags and their contents were the direct result of the illegal detention, and his disclaimer of the property did not preclude him from challenging the search of the bags or the seizure of their contents.
As a result of the illegal detention, the trial court should have granted the motion to suppress. Therefore, we reverse and remand for entry of an order granting the motion to suppress and discharging Baggett.
Reversed and remanded.
FULMER and COVINGTON, JJ., Concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).