ROTHENBERG, J.
The defendant, Manuel Fernandez a/k/a Emmanuel Fernandez, was convicted and sentenced for violating his probation in case number 01-31256-B, and for three counts of armed l-obbery in case number 07-24549. The issue raised in these consolidated appeals is whether the trial court erred in denying the defendant’s motions to suppress the identifications and evidence seized. We affirm.
The evidence at both the violation of probation hearing and the trial on the substantive offenses was that Sabrina and Hiram Perez were robbed at gunpoint in Miami Gardens of several items, including cash and jewelry. The BOLO that was issued following these robberies described the armed assailant as a black man wearing black shorts and a white T-shirt, and driving a blue Toyota with the tag hanging down. Approximately twenty minutes later and in close proximity to the first robbery, Joseph Perez was robbed at gunpoint in his driveway. Joseph Perez described the assailant as wearing black shorts, a white T-shirt, and black Jordan shoes.
Shortly thereafter, Officer Sirois pursued a vehicle matching the BOLO, but before he could effectuate a stop, the driver fled from the vehicle. Officer Vangilis, who also heard the BOLO, saw Officer Sirois standing near the abandoned blue Toyota and a man matching the BOLO, whom he later identified as the defendant, walking on the side of the road. However, when Officer Vangilis attempted to approach the defendant, he began running. Officer Vangilis pursued the defendant, called for backup, and lost sight of the defendant when he ran between two buildings.
Thereafter, while Officer De La Paz was responding to the second armed robbery, he saw the defendant, who matched the description given in the BOLO, standing near a pay phone, breathing heavily, and sweating “profusely.” Based on the BOLO, Officer De La Paz approached the defendant. After verifying the information relayed in the BOLO, due to his safety concerns, he handcuffed the defendant and conducted a pat-down search finding $444 and two gold chains in the defendant’s pocket. Approximately thirty minutes later, the three victims arrived at the gas station, and they identified the defendant as the armed robber. In addition, Hiram and Sabrina identified the, defendant’s vehicle as the vehicle used .in the armed robbery, and Sabrina also identified a firearm that was retrieved from a nearby dumpster as the firearm the defendant used during the robbery.
At the violation of probation hearing, the defendant moved to suppress the gold chains and money found on his person during the pat-down search. He argued that, at the time of the search, law enforcement lacked probable cause, and therefore the search was unlawful. The trial court found that, although law enforcement had reasonable suspicion to detain the defendant, they lacked probable cause to make an arrest until after the victims had identified the defendant. The trial court, however, denied the defendant’s motion to suppress based on the doctrine of inevitable discovery, finding that after the victims identified the defendant, the police officer had probable cause to arrest and search the defendant incident to the arrest. Thus, the trial court found that the police officer would have discovered the victims’ chains and money on the defendant’s person during the search incident to the arrest. The defendant was subsequently found to have violated his probation, and he was sentenced to life in prison.
Thereafter, the defendant was tried on the three counts of armed robbery. Prior to trial, based on the same arguments *917 raised at the - violation of probation hearing, the defendant filed a motion to suppress the victims’ identifications and the items seized during the pat-down search. The trial court denied the motion. Thereafter, the jury found the defendant guilty of three counts of armed robbery, and he was sentenced to thirty years in prison followed by ten years of probation. These consolidated appeals followed.
The defendant does not dispute the legality of the stop and temporary detention of the defendant, which was based on a well-founded suspicion to believe he had committed the armed robberies. He argues, however, that law enforcement exceeded the scope of the temporary detention by handcuffing him, conducting a pat-down search, and holding him for approximately thirty minutes until the. victims of the three armed robberies were transport ed for show-up identifications.
In Saturnino-Boudet v. State, 682 So.2d 188 (Fla. 3d DCA 1996), this Court explained that a temporary investigative “stop and frisk,” which is commonly referred to as a Terry stop, is “permissible if the detention is temporary and reasonable under the circumstances [but] only if the police officer has a wellfounded suspicion that the individual detained has committed, is committing, or is about to commit a crime.” Id. at 191 (citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). This Court further explained that during a Terry stop,
“the officer may conduct a limited search or frisk of the individual for concealed weapons where the officer is justified in believing the person is armed and dangerous to the officer or others.” [State v.] Simons, 549 So.2d [785,] 786 [ (Fla. 2d DCA 1989) ]. Additionally, the officer may detain the individual even at gunpoint and/or by handcuffs for the officer’s safety without converting the Terry stop into a formal arrest.
Saturnino-Boudet, 682 So.2d at 191. Moreover,, we rejected Saturnino-Boudet’s argument “that his 30-40 minute detention by the police to await the arrival of the police canine unit was the de facto equivalent of an arrest without probable cause.” Id.
In the instant case, the police officer handcuffed and patted down the defendant, who matched the BOLO description of a man who had just committed three armed robberies and had attempted to evade capture. The defendant thus posed a danger warranting a pat-down search, and he was handcuffed because he was a flight risk. Additionally, the detention was brief and was limited to the sole purpose of allowing the victims to be transported to where the defendant was being detained to conduct show-up identifications. Thus, based on Satumino-Boudet, we reject the defendant’s contention that the police officer exceeded the scope of the temporary detention. See also Reynolds v. State, 592 So.2d 1082, 1084 (Fla.1992) (“Courts have generally upheld the use of handcuffs in the context of a Terry stop where it was reasonably necessary to protect the officers’ safety or to thwart a suspect’s attempt to flee.”).
Although we find that law enforcement did not exceed the scope of the temporary detention, we agree with the trial court that the items seized from the defendant’s pockets were admissible under the inevitable discovery doctrine. See Maulden v. State, 617 So.2d 298, 301 (Fla.1993) (holding that “under ‘inevitable discovery’ doctrine, evidence obtained as the result of an unlawful search is admissible if the evidence would ultimately have been discovered by legal means”).
Affirmed.