STEVENSON, J.
J.T., the Defendant, was charged with burglary of a dwelling, grand theft, and possession of burglary tools. The State of Florida appeals an order granting Defendant’s Motion to Suppress the evidence seized as a result of his arrest. We reverse and remand for further proceedings.
At the suppression hearing below, two law enforcement officers provided the facts leading to Defendant’s arrest. On the morning of August 7, 2012, an anonymous person called the Fort Lauderdale Police Department and alerted law enforcement to a possible burglary of a residence. A dispatch went out at approximately 6:35 a.m. The dispatch advised that “two to three black males” were breaking into an electrical box. The dispatch further advised that the males were using a flashlight. No other identifiable details were provided.
In response to the phone call, multiple law enforcement units were sent to the area. Soon after arriving, a detective from the Fort Lauderdale Police Department observed three black males, including Defendant, riding nearby on two bicycles. The three boys were approximately 100 feet from the identified residence. The detective testified that the three boys, upon seeing law enforcement officers and the marked vehicles, “immediately ... took flight.” Shortly thereafter, an officer with the Fort Lauderdale Police Department who had responded to the dispatch spotted Defendant and the other two boys approximately 100 yards away from the identified residence. The officer testified that: “[A]s soon as they saw me, before making any contact, they — the one bike went west and the — the bike that [Defendant] and the other guy who was on the handlebars — The guy jumped off the handlebars, ran north. [Defendant] pedaled west real fast a little bit. Then he jumped off and — and started to run. And when I told him to stop, he — he got on the ground.”
Further, while observing the three boys, the officer noticed that the boy riding on the handlebars of Defendant’s bicycle was holding a black bag. The boy holding the bag dropped it upon seeing the officer. Also, while running away, Defendant dropped an orange screwdriver. Defendant was detained at approximately 6:47 a.m. (approximately twelve minutes passed between the dispatch and Defendant’s detention). The black bag was later determined to contain a computer and a bank envelope.
At the suppression hearing, the trial judge found that the police did not have *333 reasonable suspicion to stop Defendant.[1] When reviewing a motion to suppress, we are “bound by the trial court’s findings of historical fact if those findings are supported by competent, substantial evidence. However, an appellate court applies a de novo standard of review to the mixed questions of law and fact that ultimately determine constitutional issues.” R.J.C. v. State, 84 So.3d 1250, 1254 (Fla. 4th DCA 2012) (citations omitted). After reviewing the testimony presented to the lower court, we find the lower court erred in ruling that law enforcement had no reasonable suspicion to detain Defendant.
‘Whether an officer has the reasonable suspicion needed to justify an investigatory stop, based on the objective facts, depends on the totality of the circumstances observed in light of the officer’s experience.” Santiago v. State, 941 So.2d 1277, 1279 (Fla. 4th DCA 2006) (citing Belsky v. State, 831 So.2d 803, 804 (Fla. 4th DCA 2002)). A suspect’s nervous and evasive behavior “upon the approach of an officer, when considered in conjunction with a purely anonymous tip, may under the totality of the circumstances establish reasonable suspicion for an investigative stop.” Baptiste v. State, 995 So.2d 285, 297 (Fla.2008).
Here, given the combined experience of the detective and the officer, the totality of the circumstances provided ample reasonable suspicion to detain Defendant — the early morning hour, the short time frame between the anonymous call and Defendant’s detention, Defendant’s close proximity to the identified residence, the dispatch identifying two to three male suspects, the dropped bag, and the uncontroverted testimony that Defendant took flight upon seeing law enforcement officers, abandoning his bicycle and running away on foot.[2] See Sinclair v. State, 816 So.2d 149, 150 (Fla. 1st DCA 2002) (holding there was reasonable suspicion to stop the defendant when law enforcement spotted the defendant an hour and a half after a crime was reported, the defendant was near the reported crime area, and the defendant changed direction and started walking faster upon seeing the officer); see also State v. D.D.D., 908 So.2d 1180, 1181-82 (Fla. 2d DCA 2005) (finding there was reasonable suspicion to detain the defendant when police dispatch advised the officer of the suspect’s clothing, the officer arrived on the scene within two minutes, the officer observed the defendant dropping a heavy object behind a tree, and the defendant started walking in another direction when the officer approached).
Accordingly, we reverse and remand for further proceedings.
CIKLIN and LEVINE, JJ., concur.

. The lower court made no factual findings in its written order granting Defendant’s Motion to Suppress.

. During closing arguments, defense counsel refused to concede the issue of whether Defendant's actions constituted unprovoked flight. However, Defendant failed to put forth any evidence or testimony to contradict the testimony by the State’s two witnesses.