# Third District Court of Appeal

## State of Florida

Opinion filed April 18, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-631
Lower Tribunal No. 16-1019-A

_____

**I.G., a Juvenile,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Maria de Jesus Santovenia, Judge.

Carlos J. Martinez, Public Defender, and Billie Jan Goldstein, Assistant Public Defender, for appellant.

Pamela Jo Bondi, Attorney General, and Christina L. Dominguez, Assistant Attorney General, for appellee.

Before ROTHENBERG, C.J., and FERNANDEZ, and LUCK, JJ.

FERNANDEZ, J.

I.G. appeals the trial court's order withholding adjudication of delinquency and placing I.G. on probation for loitering and prowling, under sections 856.021 and 777.011, Florida Statutes (2016). We affirm the trial court's order.

After I.G. was charged under these statutes, the case went to an adjudicatory hearing. At the hearing, the State presented testimony from two police officers, Detective David Mata and Officer Lexus Guerrero. Detective Mata, from the City of Homestead Police Department, testified that on Monday, April 11, 2016, at approximately 11:30 p.m., he and his partner responded to a dispatch call in a gated community regarding two males looking into vehicles and pulling on door handles in a parking lot. The community is completely surrounded by fences and is accessible through gates that require a code for entry of pedestrian and vehicular traffic. Detective Mata arrived on the scene and remained in his unmarked vehicle, observing I.G. and the other male, believing they might break into a vehicle.

For approximately five minutes, while he was parked in the center of the parking lot, Detective Mata saw I.G. looking into three to four vehicles and pulling on the door handles of those vehicles. The detective observed I.G. and the other male walking between cars. Detective Mata testified, "when they were on the east side of the vehicle I could see them looking into the cars, but I couldn't see what they were doing. When they went to the west side of the vehicles I could see them because there was nothing obstructing me from seeing them pulling on door handles and looking in." Detective Mata noticed a male and a female on a cell phone looking at the two suspects and approaching I.G. Mata believed they were the witnesses that called 911 to report the incident. The detective decided to act in

2

order to avoid any confrontation between I.G., the other male, and the witnesses. He instructed I.G. to stop, identified himself and his partner as police officers, and had his weapon drawn. Detective Mata and his partner asked I.G. and the male to lay on the ground and show them their hands. The suspects were then handcuffed. Detective Mata called for marked units to approach, briefed the officers when they arrived, and left the scene.

Officer Lexus Guerrero testified that he responded as a backup officer, was briefed by the detectives, and spoke to a witness. Officer Guerrero asked I.G. what he was doing, and I.G. stated that he was going to a friend's house to smoke weed at a location approximately four blocks east and north of the community he was in. Officer Guerrero gave I.G. an opportunity to explain why he was in the community or whether he lived in the community, but I.G. could not give the officer any reason why he was there or how he entered the community. Officer Guerrero further testified that the area is known for a lot of motor vehicle burglaries and that I.G. was 14 years old at the time he was arrested. I.G. was then arrested and charged with loitering or prowling for his actions of looking into parked vehicles and pulling on door handles in violation of sections 856.021 and 777.011, Florida Statutes (2016).

After the adjudicatory hearing, the trial court found I.G. delinquent, withheld adjudication, and sentenced him to probation. I.G. then appealed.

3

I.G. argues that Detective Mata and his partner arrested him without first inquiring as to his identity or asking what he was doing, as required by section 856.021. The State contends that I.G. was not under arrest when the detectives interacted with him, but that he was detained for further investigation based on the observations made by Detective Mata and his partner. We agree with the State and affirm.

Because this case involves a trial court's denial of a motion for judgment of dismissal in an adjudicatory hearing, the standard of review is *de novo*. C.W. v. State, 76 So. 3d 1093, 1094 n. 1 (Fla. 3d DCA 2011). When moving for judgment of dismissal, the movant admits the facts in evidence, as well as every "conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence." A.P.R. v. State, 894 So. 2d 282, 285 (Fla. 5th DCA 2005) (citations omitted). In addition, "[A]ll reasonable inferences that may be drawn from such evidence must be viewed in a light most favorable to the state." Id.

Section 856.021 provides, in pertinent part, the following:

(1) It is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals., under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity." § 856.021, Fla. Stat. (2016).

(2) Among the circumstances which may be considered in determining whether such alarm or immediate concern is warranted is the fact that the person takes flight upon appearance of a law enforcement officer, refuses to identify

4

himself or herself, or manifestly endeavors to conceal himself or herself or any object. Unless flight by the person **or other circumstance** makes it impracticable, a law enforcement officer shall, prior to any arrest for an offense under this section, afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting the person to identify himself or herself and explain his or her presence and conduct. No person shall be convicted of an offense under this section if the law enforcement officer did not comply with this procedure or if it appears at trial that the explanation given by the person is true and, if believed by the officer at the time, would have dispelled the alarm or immediate concern.

(emphasis added).

The record establishes that I.G. was not under arrest when the detectives approached him. I.G. was detained after he was observed looking into cars and pulling on door handles so the officers could inquire about this suspicious activity. As such, Detective Mata's actions were consistent with the purpose and intent of section 856.021. Moreover, the evidence demonstrates a stop was permissible here and handcuffing I.G. during the stop did not impermissibly convert the investigatory stop into an arrest.

A stop is justified when an officer observes facts giving rise to a reasonable and well-founded suspicion that criminal activity has occurred or is about to occur. In turn, whether an officer's well-founded suspicion is reasonable is determined by the totality of the

5

circumstances that existed at the time of the investigatory stop and is based solely on the facts know to the officer before the stop.

C.E.L. v. State, 24 So. 3d 1181, 1186 (Fla. 2009) (internal citations omitted). See also Fernandez v. State, 57 So. 3d 915, 917 (Fla. 3d DCA 2011), citing to Saturnino-Boudet v. State, 682 So. 2d 188, 191 (Fla. 3d DCA 1996) ("[T]he officer may detain the individual even at gunpoint and/or by handcuffs for the officer's safety without converting the [investigatory] stop into a formal arrest.").

Detective Mata's testimony revealed that he witnessed 14-year-old I.G. walking through the parking lot after 11:00 p.m. on a Monday night, looking inside of cars, and pulling on the door handles of the cars. He was in a gated community, with restricted public access that had fences surrounding the community and front gates requiring a code to enter. The area was known to have a high rate of car burglaries. Two witnesses, members from the community, were approaching the two suspects. Based on these observations and the information he knew, Detective Mata appropriately detained I.G. This allowed the backup officers time to arrive at the scene, investigate the matter further, and determine whether I.G. had a reason to be in the community or not. The exigency of the circumstances did not allow the detectives to speak with I.G. at that very moment because they thought the two 911 callers/witnesses were going to interfere with the investigation and possibly get injured in doing so. Therefore, Detective Mata had sufficient reasonable

6

suspicion to detain I.G. for further investigation and questioning. I.G. explained that he was going to another community four or five blocks away from where he was; thus, I.G. failed to provide a reasonable explanation as to why he was in the gated community at that time of night on the night in question. Consequently, he was arrested and charged with loitering or prowling.

We thus affirm the trial court's order withholding adjudication of delinquency and placing I.G. on probation. <u>See also</u> <u>Perez-Tejon v. State</u>, 147 So. 3d 1094 (Fla. 3d DCA 2014).

Affirmed.